## Robert McKinty, Appellant, v. Lucas I. Butts, Appellee.

### Gen. No. 6,677.

1. PLEADING, § 99*—*notice under general issue should not conclude with a verification.* A notice of special defenses under the general issue should not conclude with a verification, the statute not authorizing the formation of any written issue upon such a notice.

2. PLEADING, § 99*—*notice under general issue with special plea not permitted.* A defendant has no right to give notice of special matter relied on as a defense and also to file a special plea, and when this is done, should be required to elect under which he will proceed.

3. PLEADING, § 123*—*necessity for special replication.* Where a special plea sets up new matter, there should be a special replication to frame issues of fact thereon.

4. TRIAL, § 3*—*when case treated as though oral issue joined.* Where the parties go to trial voluntarily without completing written issues, the case will be treated as if an oral issue had been joined.

5. PLEADING, § 462*—*when absence of formal issue immaterial.* Where a defendant pleads the general issue and special pleas, to which a demurrer is sustained, and afterwards files notice of special defenses under the general issue and concludes that notice with a verification and also files therewith a special plea setting up new matter and concluding with a verification, and plaintiff does not ask that he be required to elect whether he will proceed under the notice of special matter relied on as a defense or under the special plea and files no special replication to the special plea, which sets up new matter, the case will be treated as tried by consent upon both the general issue and the notice of special matter thereunder

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

McKinty v. Butts, 217 Ill. App. 234.

and upon the special plea with an adequate oral replication thereto concluding to the country, and defendant's pleadings in such case are sufficient to support a verdict if proven.

6. EXEMPTIONS, § 19*—*right to waive.* A debtor who is a single man may waive his right to an exemption.

7. EXEMPTIONS, § 19*—*what constitutes waiver.* Where a debtor against whose property an attachment writ, not under judgment, is issued, pursuant to notice, files a schedule of exemptions the total valuation of which is $590.95, and none of the goods scheduled being specifically exempt, and, upon a general execution being issued and levied upon the property at the suit of the attaching creditor, fails to schedule and have the property exempted to the extent of $100, though notified, but permits it all to be sold and the proceeds applied to the satisfaction of his debt to the attaching creditor, he loses the right to claim exemptions and is estopped to set up that the sheriff should have summoned appraisers and caused the property to be valued.

8. ATTACHMENT, § 323*—*remedies for wrongful.* It is not the purpose of the statute regarding wrongful attachment that the debtor shall have the property and also recover double its value, but he may either replevy such property where it is illegally held or may sue for double the value.

9. EXEMPTIONS, § 41*—*when debtor estopped to recover double value of property from sheriff for wrongful levy.* An unmarried debtor who, by failing to schedule his exemptions, elects to let his attached property be sold and applied in satisfaction of his debt, is estopped to recover back from the sheriff double the value of the property.

10. APPEAL AND ERROR, § 1782*—*reversal not granted to permit recovery of nominal damages.* Pursuant to the principle *de minimis non curat lex,* a judgment will not be reversed merely to permit the other party to recover nominal damages.

11. APPEAL AND ERROR, § 1782*—*when amount involved does not warrant reversal.* The fact that an unmarried debtor who filed, on attachment of his property, a schedule of exemptions, the valuation of the property in which was far in excess of his $100 exemption, may have been entitled to damages for the use of $100 of such property between the time it was attached and the date at which it was levied on under an execution issued under the judgment of the attaching creditor, is not ground for reversing a judgment for defendant in an action by such debtor against the sheriff for double the value of the goods.

Appeal from the Circuit Court of Peoria county; the Hon. JOHN

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

M. NIEHAUS, Judge, presiding. Heard in this court at the April term, 1919. Affirmed. Opinion filed March 9, 1920.

FRANK A. HALL and IRWIN L. FULLER, for appellant.

QUINN & QUINN, for appellee; F. J. QUINN, C. V. O'HERN and H. R. SCHRADZKI, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

At the time of the occurrences involved in this suit, Butts was sheriff of Peoria county, and McKinty was defendant in an attachment suit. Afterwards, McKinty sued Butts for alleged improper action and for alleged lack of proper action under said attachment writ. He filed a declaration of four counts and afterwards amendments thereto and an additional count. In the first count of the declaration, after alleging his ownership of the liquors and cigars, etc., attached, and that this was all his personal property, plaintiff alleged that he delivered to defendant, who was the sheriff with said writ of attachment, a "schedule of exemption" of said personal property, and that thereby and by virtue of the statute said property became exempt from levy under said attachment, and yet the sheriff levied thereon. The second count contained the same allegation of ownership in plaintiff, and recited the delivery of said attachment writ to said sheriff and that the sheriff took from McKinty said goods as the writ commanded; that the sheriff notified McKinty to file a schedule, and McKinty did within the time allowed by law deliver to said sheriff a debtor's schedule in accordance with said notice and therein inventoried said goods and the sheriff accepted said schedule from him; that it then became the duty of the sheriff to cause said property to be appraised and that McKinty should select such articles as he desired as exempt, not

exceeding the amount of exemption to which he might be entitled, but the sheriff failed to appoint appraisers and failed to return to McKinty any of said goods, but converted the same to his own use. The third count was like the second and averred that after the sheriff failed to appoint appraisers plaintiff demanded from the sheriff the return of all said property as exempt, but the sheriff failed to return the same. The fourth count was in trespass for taking said goods and converting the same to his own use, and made no reference to any writ of attachment or to the official character of the defendant. The first three counts were amended so as to show, among other things, that plaintiff was single and not the head of a family and was entitled to $100 worth of personal property to be selected by him as exempt under the writ of attachment. The additional count described the property and the attachment writ and the notice to plaintiff to schedule and his filing the schedule in accordance with the statute and the receipt of the schedule by the sheriff and the failing of the latter to appoint appraisers, and charged that thereupon all said scheduled property became exempt; it alleged plaintiff's demand upon the sheriff to return all said property and his failure to comply; and it alleged that his refusal constituted a levy upon exempt property, and entitled plaintiff to recover double the value of the property as provided by statute. Butts pleaded the general issue and three special pleas, to which a demurrer was sustained, and afterwards filed notice of special defenses under the general issue, and concluded that notice with a verification; and also filed therewith a special plea setting up new matter and concluding with a verification. The course pursued was inaccurate in several respects. The notice of special matter in defense should not have concluded with a verification, for the statute does not authorize the formation of any written issue upon such a notice. *Burgwin v. Babcock,* 11 Ill. 28; *Bailey v.*

*Valley Nat. Bank*, 127 Ill. 332; *White v. Bourquin*, 204 Ill. App. 83, 96. A defendant has no right to give notice of special matter relied on as a defense and also to file a special plea; and when this is done he should be required to elect under which he will proceed. *Benjamin v. McConnell*, 9 Ill. (4 Gilm.) 536; *Gilmore v. Nowland*, 26 Ill. 201; *Wyatt v. Dufrene*, 106 Ill. App. 214; *Aurora Trust & Savings Bank v. Whildin*, 208 Ill. App. 527. Plaintiff did not ask that defendant be required to make such election. The special plea set up new matter, and there should have been a special replication to frame issue of fact thereon. Where parties go to trial voluntarily, as plaintiff and defendant did here, without completing written issues, the case will be treated as if an oral issue had been joined. We collected the authorities announcing this rule in *Witteman Co. v. Goeke*, 200 Ill. App. 108, 114. Therefore the case must be treated as tried by consent upon both the general issue and the notice of special matter thereunder and upon the special plea with an adequate oral replication thereto concluding to the country. These pleadings by defendant are sufficient to support a verdict for defendant, if proven. There was a jury trial and, at the close of all the evidence, the court directed a verdict for defendant. Such a verdict was returned, a motion by plaintiff for a new trial was denied, defendant had judgment, and plaintiff appeals. We affirmed the judgment and afterwards granted a rehearing.

The actual control of the attachment writ passed into the hands of a deputy sheriff, who served the writ upon plaintiff by reading the same to him and by delivering to him a true copy thereof, and by levying upon a stock of liquors and cigars, two or three articles of furniture and a small sum of money. He notified plaintiff to file a schedule within 10 days in order to claim his exemptions. Within 10 days plaintiff filed a schedule in which he described himself as a single

man and listed the various articles levied upon and fixed a valuation upon each article or set of articles, the total valuation of which he added up at $590.95. Attached to said schedule he added the following: "List of articles selected by debtor. The articles which I hereby select from the following schedule and which I wish to retain are as follows: All articles listed on foregoing sheet to the amount of $590.95." He signed this schedule, and attached his oath to its correctness. The sheriff did not summon appraisers. McKinty demanded all the property and claimed that all was exempt. The sheriff refused to honor his demand for all the property and kept it all. Not many days thereafter plaintiff delivered to the sheriff a written demand for all the goods in question, describing them as in the schedule, but not stating upon what ground he based his demand. The record does not seem to tell what became of that attachment writ, but in that suit the plaintiff therein recovered against McKinty a general judgment and had a general execution, and the sheriff levied the same upon this property and served the execution upon McKinty and demanded of him a schedule of all his personal property if he desired to claim exemptions. McKinty refused to schedule, and the property which had previously been levied upon under the writ of attachment was sold under the general execution and satisfied the judgment. Thereafter defendant in attachment brought this suit. The facts above stated are proved and are substantially undisputed. The sheriff also introduced proof that when McKinty handed his deputy the schedule under the attachment writ, said deputy told McKinty he would accept McKinty's valuation of the property and McKinty might select from the property scheduled $100, thereof at his own valuation as his exemptions, and that McKinty refused to select $100 worth but demanded all the property as exempt. McKinty testified that he did not remember

such a conversation, and in answer to a leading question by his counsel denied that the deputy offered to permit him to select and take $100 worth as exempt. If this alleged conversation between McKinty and the deputy sheriff was material to the defense, it should have been submitted to the jury. There was also a dispute in the evidence as to whether McKinty scheduled all his personal property, which the trial judge could not determine.

A debtor who is a single man may waive his right to an exemption. *Powell v. Daily,* 163 Ill. 646. McKinty saw fit to attach to the various articles named in his schedule a valuation upon each article or set of articles. He saw fit to add to that schedule that he selected each of the articles named therein to the full value of $590.95; and he demanded their return to him, not on the ground that appraisers had not been appointed, but on the ground that he was entitled to all the property as exempt. In *Moffett v. Sheehey,* 52 Ill. App. 376, there had been an imperfect appraisement made. What was there said on page 381 is instructive on this subject: "The debtor accepted the appraisement as made, and so waived its imperfection. His schedule suggested, occasioned and excused it. The first fault was his own. He made his selection, if it may be so called, upon the appraisement made. But he did not limit it to articles not exceeding in aggregate value the amount exempted. He was bound to select them at their appraised value. *Finlen v. Howard,* 126 Ill. 262. What he selected embraced all that was scheduled. It was appraised at $879.20, and he was entitled to only $400 worth, showing an excess of $479.20. The officer could not select for him nor change the selection he had made. If the schedule and appraisement as made did not enable him to select specific articles of any appraised value, he should have sought to have them corrected. But it is evident that if each article had been appraised and the aggregate.

had amounted to what it did, he would have demanded them all.''

In *Amend v. Smith*, 87 Ill. 198, a constable levied an execution upon a field of corn. The defendant in execution claimed it was all exempt. He was entitled to only $100 worth to be selected by him. He claimed and replevied the whole crop. The court held that he could not select it as exempt without specifying a portion thereof not exceeding in value $100, and unless he made such a selection, the law was for the constable. Again, under the present statutes, none of these goods were specifically exempt. When the general execution was issued and levied upon this property, McKinty was notified to schedule and could have done so and had the property appraised and claimed his $100 exemption. He failed to do that, but chose to let all this property be sold and applied in satisfaction of his debt to the plaintiff in attachment. Section 2 of the Act (J. & A. ¶ 5584) concerning exemptions of personal property from execution, etc., directing the manner in which a schedule shall be made, provided that if the judgment debtor has presented a sufficient schedule, the return of that execution unsatisfied and the issuing of an *alias* execution shall not render it necessary for the judgment debtor to present an additional schedule for the purpose of availing himself of the benefits of the exemption law before 70 days from the date of the writ issued on a justice judgment, or 90 days on any other judgment. In this case the attachment writ was issued on November 22 and levied on November 25, 1916. A notice was given to McKinty on December 8, and he presented his schedule December 14, 1916. On February 2, 1917, the plaintiff in the attachment suit recovered a general judgment against McKinty, and had an execution on that day. If this judgment had been a special judgment in attachment, with an order for the sale of the property attached, we assume that the defendant in attachment would not have been com-

pelled to file another schedule within 90 days after the issue of the original attachment. But inasmuch as the attachment writ was not under a judgment, and the general execution was, we are of the opinion that the schedule presented under the attachment writ did not avail McKinty when a general execution was issued upon the judgment and he was served with a copy thereof and notified to file a schedule, under the reasoning in *Camp v. Ganley,* 6 Ill. App. 499 (which was before the statute as to additional schedules), and *Gullett v. Conley,* 81 Ill. App. 131. The latter case indicates that the statute making it unnecessary within a certain time to file a second schedule refers to an *alias* writ under the same judgment as the former writ.

We are of opinion that after McKinty made his own appraisement and valuation of each article or set of articles and prepared his selection on the basis of his own appraisement, and delivered said appraisement and selection to the officer having the attachment writ, he is estopped from claiming (after that suit had ended) that the sheriff should have summoned appraisers and caused the property to be valued by them. As said in *Moffett v. Sheehey, supra:* "The first fault was his own." Again, we are of opinion it was not the intention of the statute that a debtor in such a case shall have the property and also recover from the sheriff double the value of the property. If this property was illegally held by the sheriff under the attachment, it was still McKinty's property and he could have replevied it or brought suit for double the value. We think he could not have done both. In fact he did neither at that time. The attachment writ remained in force until the general execution reached the sheriff. He then levied that execution upon this property and gave McKinty the proper notice to schedule his personal property if he wished to claim his exemption. McKinty refused to schedule and did not

claim exemptions. He could have scheduled and would have obtained his exemptions. By failing to schedule he lost the right to claim exemptions. He elected to let all his property go in satisfaction of his debt. He has the value of that property in the payment of his debt, by his own volition. Surely in a suit instituted after that is accomplished, he must be estopped to recover from the sheriff double the value of all that property. All that McKinty actually lost was the use of $100 worth of personal property from December 14, 1916, when McKinty presented his schedule, to February 2, 1917, when the sheriff received and levied the general execution. McKinty presented no proof what the damages arising therefrom would be and no basis on which the jury could fix damages therefor. Near the close of the trial counsel for plaintiff twice told the court that plaintiff was suing for double damages for failure to appoint appraisers. The court had a right to take him at his word. In this state of the proof McKinty could not recover said double damages. There was no proof which would enable him to recover his actual damages, if any. The court therefore did not err in directing a verdict for defendant. We do not doubt that it would have been wise for the sheriff to appoint appraisers, notwithstanding McKinty's appraisement and selection, but we hold McKinty estopped by his conduct from recovering double damages, especially after he had refused to schedule under the execution.

But if plaintiff might have recovered nominal damages for failing to cause said property to be appraised under the attachment writ, still a judgment for one party will not be reversed merely to permit the other party to recover nominal damages. This is under the principle *"de minimis non curat lex."* In *McNutt v. Dickson*, 42 Ill. 498, this rule was thus quoted from Broom's Legal Maxims: "The court will not in general grant a new trial where the value of the amount

in dispute, or the amount of damages to which the plaintiff would be fairly entitled, is too inconsiderable to merit a second examination."

This rule has frequently been applied by the Supreme and Appellate Courts of this State. *Freese v. Glos*, 248 Ill. 280. We have applied it in *Roesch v. Young*, 111 Ill. App. 34; *Hueni v. Freehill*, 125 Ill. App. 345; *Sheldon v. Eakle*, 160 Ill. App. 282, and many other cases. We find no reversible error in the record, and the judgment is therefore affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE NIEHAUS took no part.