GREEN BROTHERS, Appellees, v. NORTHWESTERN LIVE STOCK INSURANCE COMPANY, Appellant.

1. **Live Stock Insurance:** CONDITIONS OF POLICY: FORFEITURE. A policy insuring the life of a horse provided that, in case of sickness or accident to the horse the holder of the policy should at once notify the company, or its nearest agent, of such sickness or accident. The horse was taken sick with "pink eye," the symptoms of which disease were manifested by stiffness and swelling in his limbs. After that, and up to the time of his death, which occurred on the eighth day thereafter, his eyes were much swollen, and watered, and were of a pinkish color, and his breathing was hard, but the holder of the policy failed to notify the company or its agent. *Held*, that the policy was forfeited.

2. ———: FAILURE TO PAY PREMIUM NOTE: WAIVER. Such a policy is forfeited by a failure to pay a premium note when due, and the forfeiture will not be waived by the insurance company's subsequent acceptance of payment, at a time when the horse is sick, notice of which fact is withheld from the company.

3. ———: FORFEITURE: WAIVER BY ACCEPTING PREMIUM. Where a policy on the life of a horse was already forfeited at the time of its death, and the company, ignorant of its death, accepted payment of a premium note subsequently falling due, but returned the money in a reasonable time after learning of the death, *held*, that the forfeiture was not thereby waived.

*Appeal from Clayton District Court.*—HON. L. O. HATCH, Judge.

SATURDAY, JANUARY 28, 1893.

ACTION at law upon a policy insuring one A. V. Lewis against the loss by death, caused by disease or accident, of a certain bay stallion.   There was a trial by jury, and a verdict and judgment for the plaintiffs. The defendant appeals.—*Reversed*.

*Kauffman & Guernsey* and *J. E. Corlett*, for appellant.

*Ainsworth & Hobson* and *J. Larkin*, for appellees.

ROTHROCK, J.—I.  The policy upon which the suit is founded was issued to A. V. Lewis on the twenty-second day of May, 1889.   It insured Lewis for one year against loss by death, caused by disease or accident, occurring to a bay stallion.   The amount of the insurance was seven hundred dollars, and it was provided in the policy that the loss, if any, should be paid to Green Bros., as their interest might appear. The stallion died from disease on the twenty-second day of July, 1889, and on the fifteenth day of January, 1890, Lewis assigned the said policy to the plaintiffs.

One defense to the policy is founded upon a clause therein, which is as follows:   "That the said assured has agreed and is required to use all due diligence, precaution, and care in use, and for the safety, health, and preservation of said live stock, and, in case of sickness or accident, the holder of this policy agrees to promptly summon to his aid the best veterinary surgeon to be had in the vicinity, or, if none can be had, to otherwise provide the best available care and attention; otherwise this insurance shall be void; and he shall at once notify this company or its nearest agent of the fact of such sickness or accident."   The stallion became sick on the fourteenth day of July, 1889, with a disease known as "pink eye," the symp-

toms of which disease were manifested by stiffness in his limbs. After that, and up until his death, his eyes were swollen and watered, and were of a pinkish color. His legs and chest were also swollen. On the day the horse was taken sick, a veterinary surgeon was summoned to attend him. He was called from a distance of about six miles. He examined the animal, and prescribed for him, and left with the understanding that he was to return. He did return four days afterwards, and gave no prescription, because he thought the horse was better.

Under the terms of the policy, if the insured failed to comply with the provisions requiring notice of sickness or accident, there could be no recovery for the death of the horse; and it is conceded that no notice of the sickness was given. The court instructed the jury upon this feature of the case, as follows: "The policy insures against loss by death, caused by sickness or accident; and any illness or accident of such a character that no danger of death is thereby suggested to the assured, as a reasonable man, is not the sickness or accident contemplated by this stipulation. But if this illness or accident is of such a character as to indicate to the assured, as a man of ordinary reason, that such illness or accident endangers the life of the animal, the stipulation under consideration would require notice of such sickness or accident to be given to the company or its agent." In our opinion, this direction to the jury was erroneous, when applied to the undisputed facts of the case. It is not our purpose to review the evidence. The fact is undisputed that the horse was sick and diseased on the fourteenth day of the month. There were unmistakable evidences of disease from that day until the day he died. It is true that the condition of the horse was better a day or two before he died. But the evidence of disease was plainly manifest from the day it was discovered until its fatal termination. It was not

the case of a mere scratch by way of accident, or of a mere slight attack of colic, or the like. It was a marked disease, which continued for more than a week, and then terminated fatally. It was stated in the proofs of loss that the horse was taken sick on the fourteenth day of July, 1889, and that he died on the twenty-second day of that month; that he was taken by "stiffness and swollen legs," and his eyes "were much swollen, and pink color, with hard breathing, with eyes running water." It appears to us that under such a state of facts there was no question which the plaintiffs were entitled to have submitted to the jury. The provision of the policy under consideration is absolute. It is the contract which the parties made, and are required to perform, and it can not be explained away or evaded by releasing one of the parties from the observance of its plain provisions.

II. Another defense interposed is founded upon an alleged suspension of the policy by reason of non-payment of premium. At the time the insurance was effected, Lewis gave to the defendant his promissory note for the sum of eighteen dollars, payable on the first day of July, 1889. The defendant duly notified him of the time when said note would become due. The note was not paid when it became due. On the fifteenth day of July, 1889, Lewis transmitted the money to the defendant in payment of the note, and gave no notice that the horse was then sick. There is no question that the failure to pay the note suspended the policy. The defendant claims that the acceptance of the money in payment of the note, in ignorance of the fact that the horse was then sick, did not revive the policy. The court instructed the jury that if the horse was then "sick, in such sense that it was the duty of the assured to notify the company of such sickness, and the assured in sending the money, intentionally concealed the fact

*2. ——: failure to pay premium note: waiver.*

of the sickness of the horse, such payment would not revive the policy." In view of the fact that we have found that the company should have had notice of the sickness, this instruction was not authorized by any evidence in the case.

III. There was another premium note, which became due after the horse died. The assured forwarded the money to the company to pay this note, and it was received and retained for a time, when it, and the money received on the note which was not paid when due, were tendered to the assured. It is claimed in behalf of the plaintiffs that the defendant thereby waived the right to set up the defenses upon which it relies in this case. The court instructed the jury that, if the assured forfeited his rights under the policy in the manner alleged by the defendant, the receipt and retention of this money is not a waiver of the defendant's right to take advantage of such failure in this action. As we have found that the assured had forfeited his rights, there could be no waiver. The policy was suspended for nonpayment of the premium note which became due July 1, 1889, and it was not revived by a payment received by the company when the horse was sick, and in ignorance of the sickness. It is true the money which was paid on both notes was afterwards tendered to the assured. This was not a tender of part of the amount which the assured claimed for the loss. The tender was made within a reasonable time after the proofs of loss were made, which showed that the horse was sick when the second note was paid, and it was made to avoid any claim of waiver. And there was no duty devolving on the defendant to deposit the tender with the clerk of the district court. As we have seen, the defense was complete without that.

The judgment of the district court is REVERSED.

3. ——: forfeiture: waiver by accepting premium.