## Jed Hough, Appellee, v. Kaskaskia Live Stock Insurance Company, Appellant.

1. INSURANCE—*issuance of policy by insurer's agent with notice of material facts as waiver of warranties.* Warranties by the assured that the insured race horse had not been injured or sick, made by the agent of the insurer in answer to questions in the policy to be answered by the assured, are not sufficient to defeat recovery for a loss under the policy, although a growth on the horse's leg had been burned off with a hot iron to prevent him from striking that leg with his foot, where the agent had examined the animal before issuing the policy and had had his attention called to the scar from the burning, and had thereafter issued the policy and written in the negative answers himself.

2. INSURANCE—*instruction submitting construction of policy to jury erroneous.* It is error to submit to the jury the question whether answers made by the assured to questions in the application were warranties or only representations of fact.

3. APPEAL AND ERROR—*trial of cause as though matters had been*

*specially pleaded waives failure to so plead.* Failure of the insurer to raise failure of the assured to give notice under the policy by special plea and of assured to file a replication alleging waiver of notice cannot be urged on appeal where evidence was offered and admitted on such matters without objection and instructions were given as though such matters had been specially pleaded.

4. INSURANCE—*compliance with policy requirement for immediate notice of sickness of insured animal essential.* Recovery of insurance on the life of a race horse is barred by failure to comply with the provisions of the policy sued on requiring the owner to give immediate notice by telegram to the insurer of any sickness, where the evidence shows that the owner knew as early as June 3 that the horse was suffering from some ailment, that on June 8 he sent the animal to a veterinary hospital for treatment and that he did not notify the insurer until June 12, on which date he received notice from the veterinary surgeon that the horse was in a serious condition, although he did not regard the horse as "real sick" until he received notice from the veterinary surgeon.

5. INSURANCE—*policy requirement for notice to insurer of sickness of insured animal not waived by acts not amounting to estoppel.* The requirement of a policy of insurance on the life of a valuable horse, that in case of its sickness or injury immediate notice thereof must be given to the insurer, is not waived by the insurer by letters stating that the condition of the animal at the time notice of its sickness was given to the insurer was such that it could not have developed in a short time, but not specifically referring to plaintiff's failure to give timely notice, where the plaintiff was not misled by such statements, which were not of such nature as to work an estoppel against the defense that notice had not been given as required.

6. INSURANCE—*waiver of policy requirement for notice must be specially pleaded.* Waiver by the insurer of a provision of the policy requiring the assured to give immediate notice to the insurer of the existence of a specific fact materially affecting the risk must be specially pleaded by the assured to be available to him in an action on the policy, where he has pleaded full performance of the conditions of the policy but timely notice was not given by him to the insurer of the condition covered by the policy provision.

Appeal by defendant from the Circuit Court of Franklin county; the Hon. JULIUS C. KERN, Judge, presiding. Heard in this court at the March term, 1923. Reversed with finding of fact. Opinion filed July 19, 1923.

R. T. B. EDDY and GEO. B. RHOADS, for appellant.

MOSES PULVERMAN, for appellee.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

On April 20, 1922, the Kaskaskia Live Stock Insurance Company issued a policy of insurance to appellee for the sum of $750 on a race horse, named "Brondy." The horse died July 9, 1922, and an action in assumpsit was instituted by appellee against appellant in the circuit court of Franklin county to recover on said policy. The declaration consisted of one count based on said policy and alleges the death of said horse; that proof of loss was duly given and that appellee "had complied with, kept and performed all of the terms, provisions and conditions of said policy of insurance on his part to be kept and performed," etc. To said declaration appellant filed a plea of the general issue. A trial was had resulting in a verdict and judgment in favor of appellee for $750. To reverse said judgment this appeal is prosecuted.

The record discloses that on or about June 2, the horse in question, which was under training for the purpose of developing his speed, exhibited evidence that he was suffering from some disorder, and on June 8 was sent by appellee to the veterinary hospital of Dr. Spencer of Harrisburg, where said horse remained under the care of said veterinarian until its death, which occurred July 9, 1922.

On June 12, Dr. Spencer wrote to appellee as follows: "Writing you in regard to condition in which I found your horse. He has chronic nephritis. He has fever running from 102-104. He looks as though he had been strained in the back. He isn't doing any good. Awful sore over the kidneys. I have been treating him, but he isn't improving. I hope he will make a change for the better soon." Following this letter, appellee wired appellant as follows: "Just received notice sickness of my horse Brondy, who is in

Spencer's hospital, Harrisburg." On the same date, appellee mailed a copy of the letter which he received from Dr. Spencer to the appellant.

It is first contended by appellant that appellee made untrue statements with reference to the condition of the horse at the time the policy was issued and that the statements made by appellee under the provisions of said policy amounted to warranties. One of the questions asked appellee with reference to the horse was as follows: "Has the animal been afflicted with any disease or sickness or received any hurt or injury?" Answer, "No." "3-a. Is the above-named animal (or animals) now in good health and free from any disease?" Answer, "Yes."

The record in this case discloses that the horse in question had a mark on one of his legs where he had been burned with a hot iron for the purpose of remedying or curing some injury that had been caused by striking his leg with one of his shod feet. Appellee, however, testified that before the policy was written and before the application was filled out the agent of appellant examined the horse and the scar in question and that when the above questions were asked he stated to the agent that the horse had a blemish: "You see that growth on the shin bone?" "I had it fired and killed," and that the agent replied: "That is no blemish, and I will answer 'No'" and that he filled the answer in "No."

The agent testified that appellee took him to see the horse; that he saw the place where the firing had been done, but that he did not consider it a blemish; and that the answer "No" was in his handwriting. We are therefore of the opinion and hold that even though the policy made the answers of appellee warranties, the notice to the agent was notice to appellant and it is estopped by the action of its agent. Notice to the agent of an insurance company at the time application is made, of material facts, is notice

to the company. *Scarlett v. National Live Stock Ins. Co.,* 193 Ill. App. 488; *Globe Mut. Life Ins. Ass'n v. Ahern,* 191 Ill. 167.

It is next contended by appellant that the court erred in submitting to the jury in the instructions given on behalf of appellee the construction of the policy sued on, it being the contention of appellant that the court submitted to the jury the question as to whether the answers made by appellee to questions in the application were warranties or only representations of fact. The record clearly discloses that this point is well taken. The construction of the policy was for the court. *Crosse v. Supreme Lodge Knights and Ladies of Honor,* 254 Ill. 80; *Hancock v. National Council of Knights and Ladies of Security,* 303 Ill. 66-70; *Hartsock v. Kaskaskia Live Stock Ins. Co.,* 223 Ill. App. 433.

At the close of appellee's evidence and again at the close of all the evidence motions were made by appellant to exclude appellee's evidence and to direct a verdict for appellant. These motions were denied and appellant insists that the court erred in this ruling. Appellant contends that the record discloses that the horse in question became sick about June 2; that appellee was advised of the horse's condition from that time until he sent him to the veterinarian on June 8 and that appellee having failed to give notice of said sickness until June 12, that in and of itself was sufficient to bar a right of recovery. In answer thereto, appellee insists that the appellant waived said notice and is now estopped from setting the same up in bar of a right of recovery. No special pleas were filed in this case but evidence was offered and admitted without objection and the jury were instructed as though special pleas had been filed setting up failure to give notice as provided by said policy and of forfeiture on account of alleged untrue statements in application, and as though replications had been filed

thereto setting up a waiver or estoppel on the part of appellant. That being the theory on which the case was tried, the parties are not now in a position to take advantage of the failure to file proper pleadings.

Where both parties to a suit submit instructions declaring the rules of law applicable to the facts proven and request the jury to return their verdict in accordance with those rules of law as applied to the facts proven, neither party can be heard to complain that such facts were not within the scope of the allegations of the pleadings under which those facts were permitted to be proven. *Illinois Steel Co. v. Novak,* 184 Ill. 501; *Illinois Cent. R. Co. v. Latimer,* 128 Ill. 163; *Chicago & A. R. Co. v. Harrington,* 192 Ill. 9; *Donk Bros. Coal & Coke Co. v. Stroetter,* 229 Ill. 134; *Wheeler v. Chicago & W. I. R. Co.,* 267 Ill. 306; *McKinty v. Butts,* 217 Ill. App. 234.

The vital question, therefore, for us to determine is as to whether on this record, taking the most favorable view of the same, appellee has shown a right of recovery. Paragraph 2 of said policy is as follows: ''That in event of animal's sickness, or an accident, arising from any cause whatever, it shall be the duty of the insured to immediately procure the services of a veterinarian and use every possible means to save life of animal. Notice of sickness or accident must be given to the home office at Shelbyville, Illinois, at once, direct, and not through agents, which notice shall be by telegram, and confirmed by letter within twenty-four hours thereafter, if animal or animals are insured for a sum in excess of two hundred dollars; and by immediate written notice if the insured sum of such animal or animals be less than two hundred dollars. The failure to perform any of the requirements above mentioned as embodied in this paragraph, shall release this company from any and all liability under this policy.''

In the application signed by appellee this question was asked: "Do you agree to notify this company at once by telegraph in case of sickness or accident where the amount of insurance of the animal or animals sick or injured exceed two hundred dollars?" Answer, "Yes."

The evidence in the record clearly discloses that appellee as early as June 2 or 3 knew that the horse in question was suffering from some ailment. From this ailment the horse never recovered and on July 9 he died therefrom. No notice was given to the company of the horse's condition until June 12, some ten days after appellee observed that the horse was suffering from some ailment. Appellee testified in regard thereto: "Before I sent Brondy to Dr. Spencer's on the 8th of June, 1922, I had noticed for five or six days that something was wrong with him. He would come out of the barn every morning looking like he was drawed in the back and would step like he was stepping over something; and after he got warmed up he would get over that. The trainer kept thinking it was in his feet and legs and I decided there was something wrong with his kidneys and sent him to the hospital. There was nothing more to indicate to me that he was sick than these actions I have just stated. I thought there was nothing that would be fatal." Appellee further testified in answer to a question asked by his counsel: "Well, if I had to notify the company I think the horse had to be real sick."

Dr. Spencer, the veterinarian to whom appellee sent the horse, testified: "The first three or four days that he was under my care I observed a condition that caused me to think he had a disease which might result in death. When I discovered this, I notified the defendant but had not noticed it until that time. It was about June 12 that I noticed this condition was such as to threaten death."

The evidence discloses that appellee was undertaking to determine for himself the propriety of giving appellant notice of the horse's sickness and having determined that it was not necessary so to do, he did not notify appellant until June 12, when according to the testimony of Dr. Spencer the disease then had such a hold on the horse as to threaten its death. It was not for appellee to determine the seriousness of the sickness. Under the provisions of the policy it was his duty to notify the company, unless he was willing to undertake to carry his own insurance so far as that sickness was concerned.

In *Hensel v. Capital Live Stock Ins. Co.*, 219 Ill. App. 77, the court at page 84, in discussing a question of this character, says: "The sole effect of the failure to give notice of this injury as required by the contract was that defendant would not be liable for loss by the death of the hog caused by such sickness or injury, of which the owner had not given notice by telegram to Hubbard. By failing to give the required notice of this injury plaintiff elected himself to carry the risk that the hog would die of this injury, and to absolve defendant from liability for death from that particular injury. In *Travelers' Ins. Co. v. Myers*, 62 Ohio St. 529, 57 N. E. 458, the court said: 'The insured undertook at their own peril to decide whether there was or would be a liability or not, and whether the injury received was severe enough to require the stipulated notice to be given. Having assumed that hazard and realized their mistake, they have no one to blame but themselves that they are left without a remedy.' In *National Live Stock Ins. Co. v. Bartlow*, 60 Ind. App. 233, 110 N. E. 224, where there was a similar requirement as to notice, authorities upon the subject are discussed and as no notice had been given, and the failure was unexplained, it was held that the insurance company was not liable."

The evidence bearing on the question of whether or not any of the conditions of the policy with reference to the giving of notice of the sickness of the horse in question was waived is confined to the letters and telegrams passing between appellee and appellant company, and its officers or agents. It is therefore for the court to construe these documents. An examination of this correspondence will disclose that while appellant did not specifically refer to the failure of appellee to give notice of the sickness of the horse, it did advise appellee that the then condition of said horse could not have developed in a short time.

The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions. *Globe Mut. Life Ins. Co. v. Wolff*, 95 U. S. 326; *Weston v. State Mut. Life Assurance Co.*, 234 Ill. 492; *Hensel v. Capital Live Stock Ins. Co., supra.*

There is nothing in the record that would work an estoppel against the defense, that the notice provided in the policy had not been given. Appellee was in no way misled to his hurt thereby. Appellee could not have procured other insurance at that time if the company writing the insurance were advised as to the horse's condition.

Appellee in his declaration pleaded full performance of the conditions of the policy without pleading waiver of notice, and but for the fact that the case was tried on the theory that said cause had been fully pleaded as heretofore stated, there would have been no occasion for going into the case to the extent we

have. Where a waiver is relied on by the party suing, it should be so pleaded.

In *Hart v. Carsley Mfg. Co.*, 221 Ill. 444, it is stated that the true rule is this: "Though an excuse for not performing a condition is for some purposes equivalent to performance, yet it is not the same thing, and therefore in pleading, performance must never be averred by a party who relies upon an excuse for not performing, but he must state his excuse." It is further there stated that the plaintiff must have performed as stated in the contract or must aver and prove a sufficient excuse for nonperformance. To the same effect is *Expanded Metal Fireproofing Co. v. Boyce*, 233 Ill. 284, and in *Walsh v. North American Cold Storage Co.*, 260 Ill. 322, the court on page 331 says: "The general rule is that where a plaintiff relies on facts which show a waiver of performance he must plead such facts, and he cannot plead performance and recover under proof of waiver of performance."

Others errors were assigned, but in our view of the case as above set forth it will not be necessary for us to discuss the same.

For reasons above set forth the judgment of the trial court will be reversed without remanding.

*Reversed with finding of fact.*

Finding of fact. We find as an ultimate fact to be incorporated in the judgment that appellee failed to notify appellant of the sickness of the horse covered by the policy sued on as provided in said policy and that the proofs failed to show that appellee has any cause of action against appellant on the policy sued on.