**AMERICAN MUTUAL LIABILITY IN-SURANCE COMPANY, Plaintiff,**

v.

**MacFARLANE FIRE PREVENTION CORPORATION, Defendant.**

**Civ. A. No. 15532.**

United States District Court
E. D. New York.
June 24, 1958.

Alexander, Ash & Schwartz, New York City, for plaintiff, by Sidney A. Schwartz, New York City, of counsel.

Strauss & Ferdinand, New York City, for defendant, by David A. Ferdinand, New York City, of counsel.

BYERS, Chief Judge.

This case, in which a declaratory judgment is sought, involves the single question of whether the defendant has forfeited its right to call upon the plaintiff, its insurer, to defend certain civil actions in which it is a co-defendant. They are based on circumstances about to be related.

The facts are not in dispute, which dispenses with the necessity for findings.

The defendant's business is to render services to owners and occupants of buildings in the cause of fire prevention. Among other things, it conducts fire drills on the premises of its customers; also it inspects fire alarm systems and makes replacements therein not to exceed an amount stipulated in the service contract.

The policy issued by the plaintiff is called a "Comprehensive General Lia-

bility Policy" and is in evidence as Plaintiff's Exhibit 1, and was in effect at the time material to this controversy.

Relevant portions of the policy are quoted:

"I. Coverage A—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

"Coverage B—Property Damage Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

There were certain riders attached to the policy which need not be quoted except as follows:

"Effective 1/1/52.

"1. Coverage A (Bodily Injury Liability) and Coverage B (Property Damage Liability) of insuring agreement 1 are amended to exclude the words 'and caused by accident.'

"2. Wherever in the policy the word 'accident' appears, it shall be construed to mean 'occurrence.'"

3. (This has to do with the computation of premium and is not important to this cause.)

The substitution of the word "occurrence" for "accident" probably broadens the coverage so as to include an incident or an episode.

The clause having to do with notice reads as follows:

"8. Notice of accident.

"When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the insured and all available witnesses."

As above stated, the foregoing is deemed to involve the substitution of the word "occurrence" for the word "accident" in the above clause.

The defendant under date of April 4, 1946 entered into such a contract for fire control and alarm maintenance with one Strom respecting premises 45 East Broadway, New York, N. Y., whereby in consideration of the payment of $2 a month, the defendant agreed to conduct a monthly fire drill at those premises "in accordance with the requirements of the Fire Department, Fire Prevention Division, and Section 279 of the Labor Law."

The contract specifies how the drills are to be conducted and by whom, namely, the holder of a certificate of fitness issued by the Fire Department; that all occupants will be notified by the sounding of the fire alarm to vacate the premises promptly; fire drill charts are to be properly posted containing necessary instructions as to what to do when the alarm is sounded; charts containing the employees' names and designating their duties are to be posted.

The maintenance of the alarm system and the replacement of parts are provided for.

Also the following appears:

"We are covered by Liability Insurance should an accident occur while conducting Fire Drills."

That contract had been renewed annually and was in effect on May 1, 1952 when a fire broke out in the said premises, as the result of which a number of persons were injured and some later lost their lives.

The last prior fire drill had been held on April 2, 1952, and on May 6th the defendant was informed by its representative who called to conduct the monthly fire drill on that day, that the fire alarm

was out of order and the drill could not be held by reason of the then damaged condition of the premises.

Notice was not given by the defendant to the plaintiff of this occurrence until April 12, 1955, for the reason that on April 7, 1955 the defendant became a party to litigation instituted in the State Courts on behalf of persons who had been injured or whose death had ensued the fire. Then it was that amended or supplemental complaints in three pending actions were served upon this defendant, apparently upon the theory that it had been negligent, (as well as the landlord of the premises) for failing to conduct proper fire drills and properly inspect the premises, etc.

In other words, that was the first knowledge on the part of the defendant that an effort would be made to hold it civilly liable in connection with the negligence charged against the landlord of the premises.

Thus the question is posed of whether the failure to give notice on May 5 or 6, 1952 that the fire had occurred, operates to relieve the plaintiff from defending these actions on behalf of this defendant.

■ The decisions in other cases seem to agree, that whether the delay in giving notice was reasonable in view of all the circumstances, is a question of fact (for the jury), namely whether an ordinarily prudent and reasonable man would have believed that the occurrence might give rise to a claim against him. If the answer is in the affirmative the failure to give such notice as soon as practicable, relieves his insurer of its obligations under such a policy. Maryland Casualty Co. v. Sammons, 5 Cir., 99 F.2d 323; Dunn v. Travelers Indemnity Co., 5 Cir., 123 F.2d 710; Brennan v. Travelers Ins. Co., 295 N.Y. 849, 67 N.E.2d 256; Deso v. London & Lancashire, etc., 3 N.Y.2d 127, 164 N.Y.S.2d 689, 143 N.E.2d 889.

In Standard Accident Ins. Co. v. Turgeon, 1 Cir., 140 F.2d 94, at page 96, the following occurs:

"Of course, if Turgeon had no knowledge that he was involved in an accident, if he could reasonably believe that he was not involved in an accident, he would be excused from giving notice" (citing cases).

It thus becomes the present duty to decide the issue so presented as one of fact, in the effort to function as a jury could be expected to.

■ In that connection we turn to the plaintiff's argument that the fire was written up extensively in the newspapers of May 2, 1952, and therefore the defendant's actual knowledge of the occurrence preceded by perhaps three days the report made by its own inspector.

Those newspaper articles are in evidence and have been consulted in lieu of the testimony of witnesses, as to the kind and nature of the fire and the lessons to be learned by the defendant from reading what the newspapers said on the subject.

A quotation from the New York Times is typical of all articles which are in evidence on the subject:

"A fierce flash fire burned three persons critically in a Lower East Side garment loft yesterday and injured twenty-six others. A truck driver, in a courageous rooftop rescue operation, halted a panic in the burning building and probably prevented a major tragedy.

"The fire started at 9:40 A.M. on the fourth floor of a six-story brick building at 45 East Broadway, which is two blocks east of Chinatown in a teeming garment-shop and tenement district between Catherine Street and the elevated Manhattan Bridge approach.

"The flames burned out the fourth and fifth floors, causing damage estimated at a minimum of $150,000 before they were extinguished a half hour later. The first company of firemen, Engine 9, was fighting the blaze within a minute after a passerby shouted an alarm through the door of the engine house, five doors away from the fire.

\* \* \* \* \* \*

"The building is owned by Mr. Strom, who occupies the first, second and sixth floors. *The cause of the fire had not been determined last night,* although unconfirmed reports from survivors indicated it started in a presser and spread swiftly along the racks of clothing." (Italics supplied.)

In the Herald Tribune of the same day, the remark was made that the cause was still undetermined.

If the defendant had examined a report on file at the Bureau of Fire Investigation bearing date May 1, 1952, he would have found what seems to be notes made by the Bureau at the premises on the day that the fire occurred. Among them the following are quoted:

"Feinman * * * (said) that Lichtman rang interior fire alarm, believing Fire Dept. would respond * * * ."

"Lichtman * * * that he smokes cigarettes but denied smoking while at table; that after throwing several pails of water on fire, he rang interior fire alarm which he believed notified the Fire Dept. * * *"

"Albenda * * * stated that when he heard interior fire alarm ring he believed it was for a fire drill & called his 22 employees to go down stairway to street * * * (they, the employees) ran back to 5th fl. & he told them to leave via fire escape at rear; that as they did so, smoke & flame came from 4th fl. window, forcing them back to 5th fl.; that they became panicky & he opened rear, east window in his loft * * * ."

From the foregoing the defendant would have been apprized not only that the interior fire alarm system functioned, but that an effort was made to induce evacuation in accordance with the fire drills.

It does not appear from the testimony that anything that the defendant's representative reported to it on May 5 or 6, 1952 would have indicated a suggestion that either the fire or its unfortunate results could be traced to any failure on the part of the defendant to perform the terms of its contract with the landlord of the premises.

Assuming that the defendant is chargeable with having read the foregoing, and of course that it knew that the premises were the subject of its service contract which has been above explained, the question is clearly presented of whether from such reading the defendant should have anticipated that the effort might be made to fasten culpability upon it for a failure to perform its contract duties with Strom.

To this court it is clear that the answer to the question suggested above, is in the negative.

There was no common task in which the defendant and Strom were engaged at the time that the "occurrence" took place, as was the fact in one or more of the cases which have been referred to, in which it was decided that a reasonable cause was shown to apprize an insured standing in a like contractual relation to this plaintiff, which called into operation the notification clause such as is here involved.

It seems to this court that this defendant was not put upon notice by the newspaper reports of the fire or other information available to it, that there was reason to suppose that anyone asserted that the fire was caused directly or indirectly by its failure to properly conduct fire drills, or to inspect and maintain the fire alarm system—that is, to live up to its undertaking in the service agreement.

Nor was the defendant apprized that anyone asserted a liability resting upon it until April 7, 1955, when it was brought into the State Court actions as above described.

Consequently the duty to notify the plaintiff did not arise until the latter date, and as that duty was promptly fulfilled, it results that declaratory judgment in this cause must be entered for the defendant, with costs.