295 F.2d 342
 Adele L. RAND, Plaintiff-Appellee,
v.
UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING LLOYD'S POLICY NO. DB6/234, Defendants-Appellants.
Adele L. RAND, Plaintiff-Appellee,
v.
GUARDIAN ASSURANCE COMPANY, Ltd., The Prudential Assurance Company, Ltd., and The United Scottish Insurance Company, Ltd., Defendants-Appellants.
 Nos. 26180-26181.
 United States Court of Appeals Second Circuit.
 Argued October 7, 1960.
 Decided October 11, 1961.
 
 Mendes & Mount, New York City (Joseph P. Sullivan, Benjamin E. Haller, John J. Killea, New York City, of counsel), for defendants-appellants.
 Kissam & Halpin, New York City (Leo T. Kissam, Edmond K. Leach, New York City, of counsel), for plaintiff-appellee.
 Before HINCKS, WATERMAN and MOORE, Circuit Judges.
 WATERMAN, Circuit Judge.
 
 
 1
 In these two cases, Adele Rand, a citizen of the State of New Mexico, sues the defendants, British insurers, on two policies of livestock mortality insurance indemnifying her against loss through death of her race horse, Tom F., Jr. The issues in the two cases are identical except for the amounts of insurance provided for in the two policies, and therefore the two suits were consolidated for trial and remain so upon appeal.
 
 
 2
 Mrs. Rand purchased Tom F., Jr., then a weanling, in January 1956, for the sum of $38,000. On November 2, 1956, a veterinarian, Arthur H. Davidson, examined the yearling colt at the training farm of one Ward in Kentucky and found him to be sound and normal in all respects. The defendants then issued the policies sued upon, covering the period from November 3, 1956 to November 3, 1957, in the aggregate amount of $38,000. Among the conditions of the policies was the following:
 
 
 3
 "In event of any illness, lameness, accident, injury or physical disability whatsoever of an insured animal the Assured shall immediately give notice [to the insurers' agent] * * by telephone or telegram * * * The Assured's failure to report the illness, lameness, accident, injury or physical disability as above provided * * * shall render Assured's claim null and void and release Insurers [Underwriters] * * * from all liability in connection therewith."
 
 
 4
 In January 1957, one W. W. Stephens, Mrs. Rand's trainer, noticed a "weakness" or "slight catch" in the colt's hindquarters. An X-ray taken January 29, 1957 indicated a fracture of the fibula of the left hind leg, a condition testified to as being "very common" in horses of Tom F., Jr.'s age. Soon the horse was walking normally again, but in early April, while at Belmont Park, New York, for racing, Stephens noticed a recurrence of the "catch," and the horse, now a two-year-old, was shipped from Belmont back to the Ward farm in Kentucky where he could get "a good long rest" and could be looked at by Dr. Davidson. Between April and July Dr. Davidson noted that Tom F., Jr. improved but then his condition "remained static." In late July Stephens was in Kentucky for yearling sales, and was told by Ward that the horse had improved to a point and "was kind of holding his own but wasn't improving as much as we would like for him to have." Stephens became concerned, because "we gave a lot of money for him."
 
 
 5
 In the final days of August the fatal illness of his father again took Stephens to Kentucky. He was then told by Dr. Davidson that Tom F., Jr. was getting worse all the time and that the insurance people should be notified. Stephens then telephoned Mrs. Rand or her husband at Saratoga, N. Y., informed them of the situation, and told them to notify the insurers. The Rands, on September 4, did so. On or about October 30 the defendants denied liability on their policies on the sole ground that Mrs. Rand had failed to comply with the notice conditions contained therein. On November 2, 1957 (the day before the policies were to expire) Dr. Davidson destroyed the horse for humane reasons.
 
 
 6
 At the close of plaintiff's case and again at the close of all the evidence, the defendants moved for directed verdicts. Decision thereon was reserved. The consolidated case was submitted to the jury, the defendants taking exceptions to a portion of the judge's charge. The jury returned verdicts for plaintiff, defendants renewed their motion for directed verdicts, and further moved to set the verdicts aside. All of defendants' motions were denied, judgments were entered on the verdicts, and the defendants appeal. Appellants claim that, as a matter of law, plaintiffs failed to "immediately give notice * * * by telephone or telegram" as required by the policies, and, therefore, that there was no issue of fact to go to the jury. Moreover, appellants argue that even if it were proper for the jury to determine whether the plaintiff under the circumstances "immediately gave notice" there was a portion of the court's charge to the jury, properly objected to by defendants, that was prejudicially erroneous. It is our view that the trial judge correctly submitted the question of whether the notice the plaintiffs gave complied with the notice provisions in the policies; but we agree with appellants that the charge was prejudicial to them. Therefore, we reverse the judgments below and remand the cases for a new trial.
 
 
 7
 This is a diversity suit and so the substantive rights and liabilities of the parties are governed by New York law. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; see Auten v. Auten, 1954, 308 N.Y. 155, 124 N.E. 99, 50 A.L.R.2d 246; Zogg v. Pennsylvania Mutual Life Insurance Company, 2 Cir., 1960, 276 F.2d 861. The New York courts have construed the phrase "give immediate notice" when it has appeared in insurance policies setting forth requirements that a notice of a loss or of a changed condition must quickly be relayed to the insurer. We are required to follow that construction unless there is a justification for not doing so, and we do not discover any justifiable reason for departing from the New York precedents.
 
 
 8
 When interpreting "immediate notice" the New York courts have consistently applied a so-called rule of "reasonableness" by which to define the time when the insured must give the insurer a notice of a loss or of a changed condition (as an accident) if the contract of insurance is not to be made void for delayed notice. They have held that "immediate notice" means "notice within a reasonable time under all the circumstances." Greenwich Bank v. Hartford Fire Ins. Co., 1928, 250 N.Y. 116, 164 N.E. 876; Melcher v. Ocean Accident & Guarantee Corp., 1919, 226 N.Y. 51, 123 N.E. 81; Woolverton v. Fidelity & Casualty Co., 1908, 190 N.Y. 41, 82 N.E.2d 745, 16 L.R.A.,N.S., 400; Solomon v. Continental Fire Ins. Co., 1899, 160 N.Y. 595, 55 N.E. 279, 46 L.R.A. 682; Matthews v. American Central Ins. Co., 1897, 154 N.Y. 449, 48 N.E. 751, 39 L.R.A. 433; Reina v. United States Casualty Co., 1st Dept.1930, 228 App.Div. 108, 239 N.Y.S. 196; Keegan v. Excess Ins. Co. of America, 1952, 202 Misc. 126, 116 N.Y.S.2d 687.
 
 
 9
 Therefore, at the threshold of our consideration of whether the motions for the directed verdict should have been granted we must decide if here "immediately give notice" means "give reasonably immediate notice under the circumstances." We are unwilling to depart from New York's "reasonableness" rule and are unwilling to adopt a stricter standard of interpretation for federal courts to apply when adjudicating upon claims arising from livestock policies. We realize that there are jurisdictions outside of New York that strictly interpret the notice provisions in livestock policies. See Hough v. Kaskaskia Live Stock Ins. Co., 1923, 230 Ill.App. 341; Green Bros. v. Northwestern Live Stock Ins. Co., 1893, 87 Iowa 358, 54 N.W. 349. However, New York apparently applies a "reasonableness" standard when interpreting all insurance notice clauses and, though the New York decisions are found in suits arising out of actions brought upon fire and accident indemnity policies, there is no reason why the same standard should not apply to livestock policies. In Zauderer v. Continental Casualty Co., 2 Cir., 1944, 140 F.2d 211, we applied New York's rule of reasonableness to an automobile liability policy, and in reaching that result we relied on New York cases involving both fire insurance and liability insurance undistinguishably.
 
 
 10
 The New York courts, likewise, have not applied one standard to one type of policy and another standard to a different type. In Solomon v. Continental Fire Ins. Co., 1899, 160 N.Y. 595, 55 N.E. 279, 280, 46 L.R.A. 682, involving fire insurance, the Court of Appeals stated, "immediate notice is notice within a reasonable time." In Melcher v. Ocean Accident & Guarantee Corp., 1919, 226 N.Y. 51, 56, 123 N.E. 81, 82, it stated that "it is not every trivial mishap or occurrence that the assured under such a policy of liability insurance must regard as an accident of which notice should be given immediately to the insurance company, even though it may prove afterwards to result in serious injury." In Reina v. United States Casualty Co., 1st Dept. 1930, 228 App.Div. 108, 239 N.Y.S. 196, 197, the Appellate Division of the New York Supreme Court, First Department, declared that an "`Immediate notice,' under this clause, is notice within a reasonable time under all the circumstances." (Citing cases.) And in Deso v. London & Lancashire Indem. Co., 1957, 3 N.Y.2d 127, 130, 164 N.Y.S.2d 689, 692, 143 N.E.2d 889, 891, the Court of Appeals said that "the Melcher case is authority for the proposition that ignorance of the fact that injury has resulted from an accident may excuse a delay in giving notice."
 
 
 11
 Similarly, a textbook writer finds no distinction justifying a different interpretation of the phrase in different types and kinds of policies. In his Handbook on the Law of Insurance (3d ed. 1951), Vance points out at p. 893: "Notice of loss is held to be `immediate,' within the requirement of the standard policy, when it is given as soon after the fire as is reasonably possible under existing circumstances, in the exercise of due diligence." And at p. 1001, in the chapter on liability insurance, he states: "The assured is usually required by the terms of the policy to give immediate notice or notice as soon as practicable to the liability insurer of any accident which may result in a claim under the policy. These and like expressions will be construed to mean notice within a reasonable time, and not necessarily notice immediately after the accident."[1]
 
 
 12
 There are distinct practical advantages in applying the New York standard of "reasonableness" to the "immediate notice" phrase. Strict interpretation could result in permitting no leeway for the exercise of judgment in the light of common experience. The New York courts are committed to the doctrine that the "reasonableness" standard is just to insured and insurer, and we believe that the New York courts would interpret the "immediate notice" required by these policies to mean "reasonably immediate notice under the circumstances."
 
 
 13
 There now remains the question of whether the decision as to the reasonableness of the notice that was given here should have been decided by the court or was properly submitted to the jury. Although we may not be bound by the law of New York on this issue, inasmuch as the question is not one of substantive law, Zauderer v. Continental Cas. Co., 2 Cir., 140 F.2d 211, 214, we hold that submission of the issue to the jury was not improper under the circumstances present here. Cf. Byrd v. Blue Ridge Rural Electric Cooperative, 1958, 356 U.S. 525, 527, 78 S.Ct. 893, 2 L.Ed.2d 953.
 
 
 14
 In Greenwich Bank v. Hartford Fire Ins. Co., 250 N.Y. 116, at page 131, 164 N.E. 876, at page 881, the Court of Appeals summarized as follows: "The rule has been repeatedly stated that a reasonable time, when the facts are undisputed and different inferences cannot reasonably be drawn from the facts, is a question of law." (Citing cases.) "This is one of those general rules, however, which is sometimes difficult of application, and results in the question being left to a jury when it is near the border line. Carpenter v. German American Ins. Co., 135 N.Y. 298, 303, 31 N.E. 1015." See Empire State Surety Co. v. Northwest Lumber Co., 9 Cir., 1913, 203 F. 417. Therefore, in New York, when dissimilar inferences may be drawn from undisputed facts, or when the facts are in dispute, "reasonableness" is a jury question. "It is also well settled that the reasonableness of a delay, where mitigating circumstances such as absence from the State or lack of knowledge of the occurrence or its seriousness are offered as an excuse, is usually for the jury." Deso v. London & Lancashire Indem. Co., 1957, 3 N.Y.2d 127, 129, 164 N.Y.S.2d 689, 691, 143 N.E.2d 889, 890. See Gluck v. London & Lancashire Indem. Co. of America, 2 N.Y.2d 953, 162 N.Y.S.2d 357, 142 N.E.2d 423; West Virginia Pulp & Paper Co. v. Merchants Mut. Ins. Co., 3rd Dept.1960, 10 A.D.2d 451, 201 N.Y.S.2d 314; Zurich Ins. Co. v. Maritez, 1960, 24 Misc.2d 437, 201 N.Y.S.2d 810.
 
 
 15
 The basic facts relative to the health of Tom F., Jr. that were presented at the trial squarely put in issue the question of whether the proverbial "reasonably prudent man" would have given notice to the insurers of his condition under all the circumstances at any earlier date than September 4, 1957. Certainly the facts are subject to more than one interpretive inference. Under such circumstances the question was properly one for the jury. See American Mutual Liability Ins. Co. v. McFarlane Fire Prevention Corp., D.C.E.D.N.Y.1958, 162 F.Supp. 915. Therefore the motions for directed verdicts were properly denied.
 
 
 16
 We turn now to a consideration of whether the cases should be remanded for a new trial because of the claim that a portion of the charge was prejudicial to the defendants, and, if prejudicial to them, whether the defendants properly saved the question for review.
 
 
 17
 Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A., states that:
 
 
 18
 "* * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * *"
 
 
 19
 Thus in order for us to review a portion of the trial court's charge to the jury, we must first determine whether a proper objection was taken pursuant to Rule 51. The purpose of this rule, as we stated in Troupe v. Chicago, D. & G. Bay Transit Co., 2 Cir., 1956, 234 F.2d 253, 259:
 
 
 20
 "* * * is to expedite the administration of justice by insuring that the trial judge is informed of possible errors so that he may have an opportunity to reconsider his charge, and, if necessary, to correct it."
 
 The trial judge charged the jury that:
 
 21
 "What factors should you consider in determining whether, under these facts, the Rands gave notice of the serious ailment to the insurance companies within a reasonable time under all the circumstances which was required by these insurance policies? One of the factors, of course, is when the Rands knew or should have been reasonably expected to know of such condition because, until such knowledge came to their attention, or should reasonably have come to their attention, they could not have been expected or required to give such notice. There might well be a condition of the horse, for example, which nobody would know about and which only became apparent at point X and, until such condition was known to the insured, of course no notice is required." (Emphasis supplied.)
 
 
 22
 After the charge had been completed and before the jury had retired defendants' counsel stated:
 
 
 23
 "Your Honor, may we note one exception? You explained the factors that the jury was to take into consideration. The two factors which you stated were, one, when the Rands knew or would be reasonably expected to know of a condition and, two, the condition was to be of a certain type."
 
 
 24
 There was then discussion off the record, and the court then stated:
 
 
 25
 "The defendant takes exception to a sentence which reads that there might well be a condition, et cetera, about point X.
 
 
 26
 "The defendant may have an exception if it wishes. However, in my view, the sentence, read in context, makes it entirely clear to the jury that the ailment we are talking about is the type of ailment that was defined by the Court and that notice to the insured includes, of course, notice to the insured's agent, as I repeated three or four times, and I will not charge any further on that." (Emphasis supplied.)
 
 
 27
 From this language it is evident that the court was referring to his statement to the jury that the first question they were to decide was: "When was the horse found to be suffering from a serious ailment?" and to that portion of his charge reading as follows:
 
 
 28
 "As you will recall from my reading of the clause,[2] it refers to any illness, lameness, accident, injury or physical disability whatsoever of an insured animal. Now, if this were to be taken literally, any indisposition of the animal, no matter how slight or trivial, would require notice to be given to the insurance company. However, the law does not interpret this language literally. It is not construed that way. If, for example, take almost a ridiculous example, an animal gets a small cut or a scratch or a bruise, plainly the owner is not required to give notice to the insurance company under this clause, and this is so even if, because of unforeseen circumstances, the incident, mishap or occurrence may turn out to be much more serious than one would reasonably expect at the time. You don't have to report to the insurance company every time the horse sneezes.
 
 
 29
 "On the other hand, this clause in the policy has meaning and is part of the contract between the parties. As these terms are used in the policy they mean an ailment — and I use an ailment in essence to cover all of them — of such a character as to affect the general soundness and health of the animal and not a mere temporary indisposition which does not tend to undermine or weaken the animal's constitution.
 
 
 30
 "This does not mean that the illness, accident or mishap must be such as would necessarily lead to the death of the animal. As I have pointed out, it must be of sufficient seriousness as would lead to the reasonable expectation that it would seriously affect the animal's health or constitution."
 
 
 31
 The colloquy between the court and defendants' counsel at the time the exception was taken demonstrates that counsel was objecting to the instruction that the insured's duty to give notice arose only when the horse began to suffer from a "serious ailment." The colloquy also demonstrates that the court understood counsel's position. Hence we hold that, despite appellee's claim to the contrary, appellants' exception to the charge as given was properly preserved.
 
 
 32
 The court overfavored the plaintiff by instructing the jury to ascertain the time when the horse was found to be suffering from a serious ailment and by constantly reiterating that a showing that the horse's health was seriously affected was a prerequisite to the giving of immediate notice of the horse's condition. It is not the insured's opinion of what is or is not a serious ailment that determines when notice must be given under the policy, for the policy says nothing about serious or non-serious lamenesses. Despite the existence of the "reasonableness" rule as a matter of substantive law in New York, the courts in applying it should not rewrite the insurance contract entered into by the parties. All the circumstances of the situation that gave rise to the suits and that tended to support defenses to them, not merely the one disputed circumstance of the time of plaintiff's first knowledge of the seriousness of the animal's ailment, were before the jury; and the jury question was whether, under all these circumstances, the notice the plaintiff gave was a reasonable compliance with the notice requirements of the policies. For instance, the nature of the animal's initial ailment and the undisputed facts with reference to the animal's subsequent history, as well as the nature of the insurance policies and the language of the insuring agreements therein contained, bore upon this question. The stress the court placed upon seriousness of ailment may well have influenced the jury deliberations to the prejudice of the defendants.
 
 
 33
 Reversed and remanded for a new trial.
 
 
 
 Notes:
 
 
 [1]
 For further cases demonstrating the validity of the New York position see discussion in 45 C.J.S. Insurance § 1054; Notes in 76 A.L.R. at page 53, and 123 A.L.R. at page 959; and see discussion in Vance, Handbook on the Law of Insurance, p. 895
 
 
 [2]
 (Our footnote)
 The provision in the policies that reads:
 "In the event of any illness, lameness, accident, injury or physical disability whatsoever of an assured animal, the assured shall immediately give notice to the insurer or its agent by telephone or telegram, who will instruct the veterinarian surgeon on insurer's behalf if deemed necessary."
 
 
 
 34
 HINCKS, Circuit Judge (concurring in part and dissenting in part).
 
 
 35
 I agree with my brothers that the plaintiff's judgments below should be reversed for error in the charge. But I dissent from their holding that it was proper to submit to the jury the question whether the notice provision of the policies had been complied with. I would hold that it was error to deny the defendants' motions for directed verdicts and to set aside the jury's verdicts. Accordingly, I would reverse with a direction to enter judgments for the defendants.
 
 
 36
 Without deciding whether Ward or Davidson were Mrs. Rand's agents whose knowledge would be imputable to her, it is clear that Stephens, the trainer, was such an agent, and that Mrs. Rand is chargeable with the knowledge Stephens acquired while acting within the scope of his authority on her behalf. Corrigan v. Bobbs-Merrill Co., 228 N.Y. 58, 126 N.E. 260, 264, 10 A.L.R. 662. Cf. Melcher v. Ocean Accident & Guarantee Corp., 226 N.Y. 51, 123 N.E. 81. While so acting, Stephens learned of the injury which eventually resulted in Tom F., Jr.'s destruction, on at least three different occasions: January, April, and July 1957. On none of these occasions were the insurers given "immediate" notice "by telephone or telegraph." No notice at all was given until September 4th. If the condition clause of the policies means what it says, no question of fact existed for the jury to decide, and the district court erred in denying defendants' motion for a directed verdict. The questions before us, then, are these. Under the law of New York, is this clause to be enforced according to its terms, or is a so-called rule of "reasonableness" to be injected? If the latter interpretation be adopted was the question whether "immediate notice" was given properly submitted to the jury?
 
 
 37
 The majority opinion rests principally upon cases holding that "immediate notice" means "notice within a reasonable time." But these cases are not determinative of the New York law applicable to a case such as this which turns upon a policy of livestock mortality insurance. Greenwich Bank v. Hartford Fire Ins. Co., 250 N.Y. 116, 164 N.E. 876, was a fire insurance case. Deso v. London & Lancashire Indemnity Co., 3 N.Y.2d 127, 164 N.Y.S.2d 689, 143 N.E.2d 889; Marcus v. London & Lancashire Indemnity Co., 6 A.D.2d 702, affirmed 5 N.Y.2d 961, 184 N.Y.S.2d 837, 157 N.E.2d 714; Gluck v. London & Lancashire Indemnity Co., 2 N.Y.2d 953, 162 N.Y.S. 357, 142 N.E.2d 423; and Melcher v. Ocean Accident & Guarantee Corp., 226 N.Y. 51, 123 N.E. 81, all involved policies of third-party liability insurance and all except Melcher contained clauses providing for notice "as soon as practicable."
 
 
 38
 The present case is in what we once called, in a different context, the "zone in which federal courts must do their best to guess what the highest state court will do." Cooper v. American Airlines, Inc., 2 Cir., 1945, 149 F.2d 355, 359, 162 A. L.R. 318. So doing, I think that the New York Court of Appeals would hold that the notice provisions in these mortality policies should be strictly enforced and that that court, made up now, as in 1945, when Cooper was decided, of "reasonable intelligent lawyers * * * fully conversant with New York `jurisprudence,'" Cooper, supra, would not regard livestock mortality insurance policies as contracts entered into by parties of unconscionably unequal bargaining power and would feel that this clause is part of the price paid by owners to insurers such as the present defendants. If such a clause is to be read out of the policies, the only result will be higher premiums or greater difficulty in obtaining this type of coverage. I think that the New York court would regard the policy reference to notice by telephone or telegraph as pointing up the intended meaning of "immediate notice" in these policies. Especially is this so as the requirement of notice of injury and illness in livestock mortality insurance policies has an importance not generally existing elsewhere in the field of insurance. For immediate notice of the disability under a mortality policy may enable the underwriter to take steps to prevent the death upon which the policy is conditioned. Indeed, in these very policies there was a provision that "the Assured shall * * * allow removal [of the insured animal] for treatment, if required by the Underwriters." Plainly this option was one for the underwriter — not the assured.[1] None of the New York cases cited in the majority opinion was addressed to a notice requirement in such policies as these.
 
 
 39
 The weight of authority elsewhere supports the views I have attempted to articulate. I think a New York court would regard these decisions in sister states as representing the American law of livestock insurance and would adopt them. In Hough v. Kaskaskia Live Stock Ins. Co., 1923, 230 Ill.App. 341, the court held:
 
 
 40
 "It was not for appellee to determine the seriousness of the sickness. Under the provisions of the policy it was his duty to notify the company, unless he was willing to undertake to carry his own insurance so far as that sickness was concerned."
 
 
 41
 And in Green Bros. v. Northwestern Live Stock Ins. Co., 1893, 87 Iowa 358, 54 N.W. 349, which involved an animal that became ill on the 14th, then seemed to recover, and died on the 22nd, a charge that the illness must be such as to indicate to a reasonable man that the animal is in danger was held erroneous and a judgment in favor of the insured based on a jury verdict was overturned. Acting "vicariously" for the New York courts, then, see Dale System, Inc. v. Time, Inc., D.C.D.Conn., 116 F.Supp. 527, I would hold that under New York law the court below erred in reading a rule of reasonableness into the notice condition of these livestock policies. It should have enforced the provision according to its plain meaning.
 
 
 42
 But even if the New York court would interpret the "immediate" notice required by these policies to mean "reasonably immediate" or, as the majority opinion suggests, such seasonable notice as the "proverbial `reasonably prudent man' would have given," there still was a failure of the required notice.
 
 
 43
 In Deso, supra [3 N.Y.2d 127, 164 N. Y.S.2d 691], it was said: "It is also well settled that the reasonableness of a delay [in giving notice], where mitigating circumstances such as absence from the State or lack of knowledge of the occurrence or its seriousness are offered as an excuse, is usually [one] for the jury." But here there was neither pleading nor evidence of any mitigating circumstances. As pointed out above the plaintiff, through Stephens her trainer, knew as early as January and in April that her valuable and heavily insured race horse had suffered a lameness. In July, she learned that the initial improvement of this lameness had ceased. Yet she gave no notice until September. These facts place the instant case within the Deso holding that "an unexcused delay of that length [51 days] constitutes a breach of condition as a matter of law." The case here should be remanded for a dismissal as was the Deso case.
 
 
 44
 The Melcher and Gluck cases, also cited in the majority opinion, are distinguishable from the instant case for the same reasons that they were expressly distinguished in the Deso opinion. In Melcher, there was evidence that the assured was without knowledge of any bodily injury which could result in a claim against the assured. Here, the plaintiff's own agent testified to contemporaneous knowledge of the injury or lameness. Hence here there was no basis for lack of knowledge as an excuse for the delay. In Gluck, the assured's confusion as to the coverage of the policy was advanced as an excuse for the delay. No such factor is present here. In Greenwich Bank, the court was concerned with an "immediate notice" of loss clause in a fire insurance policy. The court held that because this clause "is linked up to those provisions relating to requirements after the loss, we should give this policy a reasonable interpretation, and a fairly liberal construction. Such is the law." [250 N.Y. 116, 164 N.E. 880.] In the instant case we are concerned with a requirement preceding the loss and hence not within the Greenwich Bank doctrine.
 
 
 45
 In my opinion, in the case here the reasonableness of the notice was a question of law for the court under that line of cases which stem from Chief Judge Cardozo's opinion in Rushing v. Commercial Cas. Ins. Co., 251 N.Y. 302, 304, 167 N.E. 450,[2] holding that notices were not "immediate" when given after delays far shorter than that occurring here. I think that even if "immediate" notice was reasonable notice under applicable New York law, the court should have ruled as a matter of law that such notice was not given.
 
 
 
 Notes:
 
 
 [1]
 Conditions 9 and 10, respectively, of the two policies contained options for cancellation, one in behalf of the Assured and the other in behalf of the insurers. The insurers' option read as follows:
 "This Certificate may also be cancelled, with or without the return or tender of the unearned premium, by the Insurers or by Thoroughbred Service Corp. [insurers' American agent] in their behalf, by delivering to the Assured or by sending to the Assured by mail, registered or unregistered, at the Assured's address as shown herein, not less than five days' written notice stating when the cancellation shall be effective, and in such case the Insurers shall refund the paid premium less the earned portion thereof on demand."
 It will be observed that such an option lends further emphasis to the importance of strict compliance with a requirement of immediate notice by the assured of "any illness, lameness, etc." in a livestock mortality policy.
 
 
 [2]
 The Deso opinion, supra, in the following passage reaffirms and applies the Rushing doctrine:
 "Thus in the Rushing case, supra, 251 N.Y. at page 304, 167 N.E. at page 451, Cardozo, Ch. J., stated that as a matter of law, `In the absence of explanation or excuse, a notice of an accident withheld for 22 days is not the immediate notice called for by the policy'. In an earlier case this court, having found no mitigating circumstances, held that a delay of 10 days was unreasonable as a matter of law (Haas Tobacco Co. v. American Fidelity Co., 226 N.Y. 343, 123 N.E. 755, 13 A.L.R. 132; see, also, Quinlan v. Providence Washington Ins. Co., 133 N.Y. 356, 31 N.E. 31 [33 days]; Reina v. United States Cas. Co., 228 App. Div. 108, 239 N.Y.S. 196, affirmed 256 N. Y. 537, 177 N.E. 130 [26 days]; Vanderbilt v. Indemnity Ins. Co. of North America, supra [265 App.Div. 495, 39 N.Y.S. 2d 808] [28 days])."