## Oscar B. Hensel et al., Appellees, v. Capital Live Stock Insurance Company, Appellant.

### Gen. No. 6,802.

1. INSURANCE, § 584*—*when plea sets up good defense.* In an
action to recover on a policy of live stock insurance, a plea which
sets up a provision of the contract requiring the insured to give
immediate notice to the insurer in case of sickness or injury of any
animal covered by the policy and providing that the insurer shall
not be liable for loss by death if the insured fails to give such
notice, and alleges failure to give such notice, sets up a valid de-
fense.

2. PLEADING, § 445*—*when variance arises.* One cannot plead
performance and recover under proof which shows waiver of per-
formance.

3. INSURANCE, § 646*—*when evidence of waiver is inadmissible.*
Where, in an action to recover on a policy insuring live stock,
plaintiff files a declaration consisting of a special count on the
policy, in which he alleges in general terms that he had performed
all of the conditions of the policy, no waiver being pleaded, evi-
dence to show waiver is improperly admitted.

4. WAIVER, § 1*—*what is essential to waiver.* Knowledge of the
facts is necessary to bind a party by a waiver.

5. INSURANCE, § 665*—*when evidence is insufficient to show
waiver.* In an action to recover on a policy insuring a hog which
contained a clause requiring the insured to give immediate notice

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

to the insurer in case of sickness or injury of the hog, evidence which showed that insured discovered the sickness or injury of the hog on January 29 and employed a veterinary to attend it, without notifying the insurer, such injury consisting in a fracture of a small bone of the knee joint; that on February 23 an injury to the shoulder was discovered, pus and a septic condition of the blood being present, and another veterinary was called in to assist; that on February 26 insured informed insurer of the injury at the latter's office, telling the insurer that the hog was unable to get up and that two veterinaries had been employed who thought the hog's leg would be stiff, as to 'which the insured stated he was indifferent provided the hog got well, but not telling the insurer of the date of injury nor of the seriousness of the case nor of the septic condition, *held* not sufficient to establish a waiver of the clause requiring notice.

6. INSURANCE, § 348*—*what is necessary to cause waiver of provision of policy.* In an action to recover on a policy insuring a hog, in order that a conversation of the insured with the insurer concerning an injury which the hog had received may constitute a waiver of a clause in the policy requiring immediate notice to insurer of injury or sickness of the hog, there must have been something in what the insurer said or did which induced the insured to rely and act upon it and to take a different course from that which he would otherwise have taken and which would make it operate as a fraud upon insured for the insurer to enforce the clause thereafter.

7. INSURANCE, § 248*—*what is effect of failure to give notice of sickness of animal to insurer.* Failure of insured to give notice of sickness or injury of the insured animal as required by the policy does not avoid the policy but merely relieves the insurer from liability for loss by death of the hog caused by the sickness or injury of which notice was not given, and constitutes an election of the insured to carry himself the risk that the hog would die from that injury or sickness.

8. INSURANCE, § 348*—*what does not constitute waiver of provision of policy.* That an insurer issuing a policy of insurance on a hog after the hog's death furnished the insured blanks whereon to make proof of loss is not a waiver of a clause of the policy requiring immediate notice to the insurer in case of sickness or injury of the hog where the blanks contained a provision that furnishing of them in no manner waived any of the insurer's defenses to the policy.

Appeal from the Circuit Court of Stark county; the Hon. C. V. MILES, Judge, presiding. Heard in this court at the April term,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

1920. Reversed with finding of facts. Opinion filed October 12, 1920. Rehearing denied November 4, 1920. *Certiorari* denied by Supreme Court (making opinion final).

THOMAS J. GRAYDON and JAMES H. RENNICK, for appellant.

CLARENCE W. HEYL, HARRY C. HEYL and JOHN W. FLING, JR., for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The Capital Live Stock Insurance Company issued to H. F. Adams a policy insuring him against loss of a Poland China hog "by death caused by disease or accident (including fire and lightning)" in the sum of $1,500. The policy contained the following provision in large caps in a prominent position in the policy: "What to do in case of sickness or injury. In case of sickness or injury of any animal covered by this policy, the insured shall give immediate notice thereof by telegram to Gaius W. Hubbard, 175 West Jackson Boulevard, Chicago, Illinois, and the Company shall not be liable for loss by death if the insured fails to give such notice." Adams filed a declaration consisting of a special count on the policy, in which he alleged in general terms that he had performed all the conditions of the policy. To this was added the common counts. Defendant filed a plea of the general issue and a second plea, setting up the provision of the contract above quoted, and it therein alleged that said animal was taken sick or injured on January 29, 1919, with the sickness or injury which afterwards resulted in its death, and that Adams did not give immediate notice thereof as said contract required. It also filed a third plea which set up the same provision and that the animal became sick about January 29, 1919, and that Adams knew of it and decided upon his examina-

tion that such sickness or injury was not serious enough to give defendant said notice as required by the policy and elected to carry the risk of said sickness or injury himself and absolve defendant from liability for the death of said animal resulting from such sickness or injury. To these special pleas Adams replied that he did comply with each and every provision of said policy. This replication concluded to the country and defendant joined issue thereon. Just before the trial began plaintiff got leave to amend the declaration, so as to make his partner, Oscar B. Hensel, a coplaintiff. A very imperfect amendment was made, but as no point is made against it, Hensel will not be further mentioned. There was a jury trial and a verdict and a judgment for plaintiffs for $1,531, from which defendant appeals.

1. In *Binnie v. Western Live Stock Ins. Co.*, 213 Ill. App. 75, we held that a provision very similar to the one above quoted was a contract which the parties had a right to make and which was binding upon them and we there cited numerous authorities to that effect, to which we here refer. These special pleas therefore set up a valid defense, and the only replication thereto was that plaintiff did perform that and all other conditions. There was no proof of performance of said condition, but positive proof by Adams, himself, that he did not give any such notice as the contract required. Plaintiff relies solely upon a conversation with Hubbard long after the hog was injured, which he claims amounted to a waiver of said condition. He did not plead a waiver. A material question is whether proof of a waiver is admissible where waiver is not pleaded. Some earlier cases in this State so hold. The recent cases are to the contrary. In *Hart v. Carsley Mfg. Co.*, 221 Ill. 444, it is stated that the true rule is this: ''Though an excuse for not performing a condition is for some purposes equivalent to performance, yet it is not the same thing, and there-

fore in pleading, performance must never be averred
by a party who relies upon an excuse for not perform-
ing, but he must state his excuse." It is further there
stated that the plaintiff must have performed as stated
in the contract or must aver and prove a sufficient ex-
cuse for nonperformance. To the same effect is *Ex-
panded Metal Fireproofing Co. v. Boyce*, 233 Ill. 284.
In *Walsh v. North American Cold Storage Co.*, 260
Ill. 322, the court said, on p. 331: "The general rule
is that where a plaintiff relies on facts which show a
waiver of performance, he must plead such facts, and
he cannot plead performance and recover under proof
of waiver or performance." These recent cases refer
to the earlier cases, holding that waiver can be proved
without pleading it and do not follow them. These
later cases have been followed in recent Appellate
Court cases, and among them *Brenton v. Newlin*, 161
Ill. App. 168. The great value of common-law plead-
ing is that it produces an issue where one party al-
leges a certain matter which the other party denies.
Each party knows what question is to be tried, and
can prepare his proofs to meet it. The course here
pursued by appellee would permit the parties to liti-
gate a matter upon which no issue had been formed.
It would permit one party to take the other by sur-
prise by presenting proof of matters not pleaded. The
evidence which plaintiff claimed tended to show a
waiver should not have been admitted and the court
erred in rulings on instructions on this subject.

2. But, if waiver of the condition above quoted had
been pleaded the proof thereof did not support plain-
tiff's contention, and it should not have resulted in
a verdict for plaintiff, for several reasons:

(a) A knowledge of the facts is necessary to bind
a party by a waiver. In *Order of Foresters v.
Schweitzer*, 171 Ill. 325, "full knowledge of the al-
leged cause of forfeiture" was required to establish
a waiver. Similar language was used in *Coverdale v.*

*Royal Arcanum,* 193 Ill. 91. In *Bennecke v. Connecticut Mut. Life Ins. Co.,* 105 U. S. 355, the court said: "A waiver of a stipulation in an agreement must, to be effective, not only be made intentionally, but with knowledge of the circumstances. This is the rule where there is a direct and precise agreement to waive the stipulation. *A fortiori* is this the rule when there is no agreement either verbal or in writing to waive the stipulation, but where it is sought to deduce a waiver from the conduct of the party." We so held in *Modern Woodmen of America v. Wieland,* 109 Ill. App. 340, on p. 351. The sickness or injury of the hog was ascertained by Adams on January 29. He sent no notice to Hubbard by telegram or otherwise. He employed a veterinary surgeon to attend the animal. The injury consisted in a fracture of one of the small bones of the knee joint. On February 23 an injury to the shoulder was discovered and pus was found and a septic condition of the blood and another veterinary surgeon was called by Adams to assist. On February 26, 1919, Adams called at the office of Hubbard in Chicago and then gave him the first information of an injury to this hog. Adams told Hubbard that the hog he had insured with defendant was injured and unable to get up, and that he had employed two veterinaries to take care of him; that the doctors thought his leg would probably be stiff, that there would probably be a stiff knee joint, but that the owners did not care about that if the hog only got through, so he could be used for breeding purposes. He did not tell Hubbard when the injury occurred unless his assent to a leading question put to him on cross-examination can be held to mean that he told the date. He told Hubbard nothing about the seriousness of the case and told him nothing about the injury and septic condition discovered on February 23. Because the true facts and true conditions were not made known to Hubbard, what he said on that occasion ought not to be held a

waiver of the rights of defendant growing out of the failure of Adams to give the notice required by the provisions above quoted.

(b) In order to constitute a waiver by that conversation between Adams and Hubbard, there must have been something in what Hubbard said or did which induced Adams to rely and act upon it, and to take a different course from what he otherwise would have taken and which would make it operate as a fraud upon Adams for defendant afterwards to enforce this condition. In *Knickerbocker Ins. Co. v. Gould,* 80 Ill. 388, on p. 394, the court said:

"Where a defective notice is given, if the company points out the defects, the insured can supply them by a new notice, and if the company fails to point out the objections, they may very properly be regarded as waived. But a notice not served in time rests on a different principle. If the company makes objection, the insured cannot remedy the defect. It is too late, and hence there is neither reason nor necessity for the company to speak or be concluded by its silence."

In *Weston v. State Mut. Life Assurance Co.,* 234 Ill. 492, speaking on this subject the court said: "This act of the company did not in any way affect the actions of Curtis. He was not led to do or omit to do anything which he would otherwise have omitted or done." In *Globe Mut. Life Ins. Co. v. Wolff,* 95 U. S. 326, the court said:

"The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions."

Adams was in no way injured by what Hubbard said or did, which was to the effect only that Hubbard ap-

proved the veterinary surgeons Adams had selected and said he saw no reason why the hog should not get along all right and that he would telephone one of the veterinary surgeons in regard to the care of the case. The right of Adams to recover for the death of the hog from these injuries had already been lost for failure to give the notice required by the contract. There was nothing Adams could have done to revive that right after the conversation with Hubbard.

(c) Plaintiff treats the case as though defendant was alleging a forfeiture of the contract. We think this is not a correct statement. The insurance was against death caused by disease or accident, including fire and lightning. Certain diseases were excepted, including death by hog cholera. The failure to give notice of this injury did not avoid the policy. If the hog had been killed by fire or lightning after this injury, the failure to give notice of this injury would not have prevented a recovery for the death caused by fire or lightning. If the hog had recovered from this injury, the policy would still have been in force until the end of the term. The sole effect of the failure to give notice of this injury as required by the contract was that defendant would not be liable for loss by the death of the hog caused by such sickness or injury, of which the owner had not given notice by telegram to Hubbard. By failing to give the required notice of this injury, plaintiff elected himself to carry the risk that the hog would die of this injury, and to absolve defendant from liability for death from that particular injury. In *Travelers' Ins. Co. v. Myers*, 62 Ohio St. 529, 57 N. E. 458, the court said. "The insured undertook at their own peril to decide whether there was or would be a liability or not, and whether the injury received was severe enough to require the stipulated notice to be given. Having assumed that hazard and realized their mistake, they have no one to blame but themselves that they are left without a rem-

edy." In *National Live Stock Ins. Co. v. Bartlow*, 60 Ind. App. 233, 110 N. E. 224, where there was a similar requirement as to notice, authorities upon the subject are discussed and as no notice had been given, and the failure was unexplained, it was held that the insurance company was not liable.

3. After the death of the hog, Adams asked defendant for blanks on which to make proofs of loss and defendant furnished them, and it seems to be contended that that act of the defendant was a waiver of this defense. Those blanks contained the following: "The insured hereby agrees that the furnishing of this loss blank to the insured in no manner waives any defense it now has or it may have to the payment of said claim hereunder." In *Binnie v. Western Live Stock Ins. Co., supra,* there was a very similar provision in the blanks furnished by defendant to the plaintiff, and it was held that that provision prevented such a waiver, and numerous authorities were there cited in support of that position.

The judgment must therefore be reversed and, as no waiver was pleaded, and, if it be treated as pleaded it was not proved, we conclude we should not remand the cause.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment. We find that plaintiffs failed to notify defendant of the injuries to the hog which the policy sued on required them to give, and that plaintiffs did not plead any waiver by defendant of said notice, and that no such waiver was proved; and that the proofs show that plaintiffs have no cause of action against defendant under the policy sued on.