## Hartford Live Stock Insurance Company v. Henning.

(Decided December 5, 1924.)

### Appeal from Shelby Circuit Court.

1. Insurance—Noncompliance with Provisions of Policy Insuring Cow Held Not Excused by Owner's Absence and Employee's Ignorance of Insurance.—Noncompliance with conditions of policy

insuring cow, requiring immediate notice to insurer of sickness of cow and of death of cow, and prohibiting disposal of carcass, without insurer's inspection and examination, held not excused by owner's absence at time of sickness and death of cow, and employee's ignorance as to insurance.

2.  Insurance—Noncompliance with Stipulation as to Notices of Sickness and Death of Insured Cow Ordinarily Precludes Recovery.— Generally, stipulation in policy insuring cow, providing for notice to insurer of illness and of death of cow, within specified time, is valid, and must be complied with, except where compliance is not made condition precedent to right of recovery, or where notice was prevented by casualty or misfortune.

JOHN K. TODD, C. G. MYERS and WILLIS, TODD & WILLIS for appellant.

E. B. BEARD for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

In this action, the appellee recovered in the court below the sum of nine hundred dollars ($900.00), being the full amount of a policy of insurance she had taken out with appellant in June, 1921, on the life of a fine registered Jersey cow. By its terms, the policy ran for three months from its date and did not cover death due, directly or indirectly, to calving.

From the evidence, it appears that the cow calved on August 17, 1921, but without any bad results. However, on August 20, 1921, it was noticed by the employees of appellee who managed her stock farm in Shelby county, Kentucky, that the cow showed symptoms of illness and was "off her feed." The appellee had in the meantime, after the birth of the calf, left her home and gone to the Indiana State Fair. She did not return until the 17th of September, and according to her testimony did not know of the illness and subsequent death of the cow until she got back on the 17th. In the proof of loss which was filed by appellee with appellant, it was stated by the manager of appellee's farm and by the veterinary, who had attended the cow for the appellee from August 20th until its death, that the cow was first taken ill on August 20, 1921, and continued so until she died on September 3, 1921; that the veterinary was in daily attendance on the cow during this period and that the cow was immediately buried after her death without a post-mortem being held. Yet on the trial, these witnesses tes-

tified that although the cow was "off her feed," begin-
ning with August 20th, she would recuperate and then
"go off her feed again," and they did not believe until
the day she died that she was seriously ill or really sick.
However, the veterinary did testify on trial: "This cow
was sick off and on for two or three days; this cow ate
a little, I thought she would get along all right; every
time she had an attack she would get a little worse and a
little sicker and finally on the 3rd of September she died.
She was up the day before she died walking around."
He further said on the trial that he was not called to wait
upon this cow specifically but that he was under contract
with the appellee to visit her farm daily and look over
her herd.   He also stated at the trial that a post-mortem
on the cow had been held but was unable to state why in
the proof of loss he had made a contrary statement.   He
admitted that the cow had been buried without the ap-
pellant being notified of the illness or death of the cow,
and that he had never furnished nor had any one else
furnished appellant with a written copy of the findings
of the post-mortem.   He testified, though, that the cow
died of anemia, as he had stated in the proof of loss
filled out by him.

It stands without dispute in the evidence that the
first notice the appellant ever received of the illness or
the death of the cow was that given its agent in Shelby-
ville on the 17th of September, the date of the appellee's
return to her home.   By the fifth clause of the policy of
insurance, it was provided that in the event of sickness
of the cow, it was the duty of the assured, among other
things, at once to give notice of such sickness by telegraph
to the company at its home office in Chicago, Illinois, and
that the insurance covered by the policy should not
cover any loss where the assured failed to comply with
this condition.   Section 6 of the policy provided that in
case of death of the cow, the assured should at once give
notice thereof by telegraph to the company at its home
office and should not dispose of the carcass without the
company's inspection and examination unless and until
written or telegraph permission for such disposal had
been obtained from the company unless some law or ordi-
nance otherwise required.   This section also provides
that the company should not be liable for any loss under
the policy when the assured failed to comply with these
conditions.   A like provision was found in section 4 of

the policy requiring the assured to have a post-mortem examination made in a case like this one and to furnish the insurer with a report thereof. The appellant defended this action on the ground that the cow died as a result of calving, and secondly, on the ground that the appellee had failed utterly to comply with the provisions of the policy hereinbefore noted.

From the statement of facts, it appears that the assured did fail to comply with the terms of these sections. Her only excuse is that, being absent from her home, she did not know of the illness or death of the cow until she returned, when she promptly notified the company, and that her employees on the farm, who did know of the sickness and death of the cow, did not know that the cow was insured. It is apparent that such excuse cannot prevail. The conditions set forth in the policy are reasonable and they are material and important parts of the contract and should not be deliberately set aside as of no moment. The general rule is that where a policy contains a stipulation to the effect that notice of illness and death must be given within a specified time, such stipulation is valid and must be complied with before a recovery can be had on the policy, except where not made a condition precedent to such right of recovery or where it is made to appear that the party whose duty it was to give the notice was prevented by casualty or misfortune of some kind from giving it. Jefferson Realty Co. v. Employers' Liability Assurance Corp., 149 Ky. 741; Maryland Casualty Co. v. Burns, 149 Ky. 550.

Provisions of live stock insurance contracts like these in question have been held valid and binding and a failure to comply with them held to defeat any right of action on behalf of the assured. Johnston v. Northwestern Live Stock Ins. Co., 107 Wis. 337; Alston v. Northwestern Live Stock Ins. Co. of Des Moines, 53 Pac. 784 (Kan.); Green Bros. v. Northwestern Live Stock Ins. Co., 87 Iowa 358; National Live Stock Ins. Co. v. Bartlow, 60 Ind. App. 233; Hensel v. Capital Live Stock Ins. Co., 219 Ill. App. 77.

It is of the highest importance that the insurance company in cases of this character receive prompt notice of the illness and death of the animal insured in order that it may see that the animal has proper attention, and that it may have opportunity to investigate and know whether or not the animal is ill from any cause not

covered by the policy or dies from such cause.   Whether or not the appellee or her employees should have been alarmed by the apparent illness of the cow prior to September 3rd, it is absolutely certain that her agents knew the cow was ill on the day it died and that it did die on September 3rd.   Yet two weeks were allowed to elapse before any notice either of the illness of the cow or of its death was given to appellant, and its carcass was disposed of without any opportunity of inspection by appellant although appellee's veterinary admits that the disposal of the carcass under the laws and regulations of the State Board of Health could have been held up long enough to have notified appellant of the death of the cow.   The knowledge of the appellee's employees must be charged to her, and she cannot under the facts of this case excuse her failure to give the notice required, on the ground that she did not personally know of the illness or death of the cow.   It was her duty to keep herself informed of this, or at least to notify her agent in charge of her place while she was away that she had such insurance on the cow in order that he might in the event of illness take prompt and proper steps to protect appellee's rights under her policy.

In the case of Swain v. Security Live Stock Insurance Co., 165 Mass. 321, the facts were very similar to the present case.   There the owner of a valuable horse which died failed to give the notice called for by a policy similar to appellee's.   The horse was in charge of a trainer named Cox and it did not appear that the owner knew of the illness which resulted in the death of the horse within the time limit of the "notice section" in the policy, nor did it appear that the trainer knew that the assured had any insurance on the horse.   The Supreme Court of Massachusetts, however, held that despite these facts the assured could not recover on the policy as he had failed to give the notice called for.

It is, therefore, apparent that the trial court should have sustained the motion of the appellant for a peremptory instruction in its favor made at the close of the appellee's case and again at the close of the whole case. If on a retrial of this case, the facts appear as on the first trial, the court will peremptorily instruct the jury to find for the appellant.   It is, therefore, the judgment of this court that the case be reversed for a new trial consistent with this opinion.

Judgment reversed.