**UNDERWRITERS AT LLOYDS, LONDON et al., Appellants,**

**v.**

**T. I. HARKINS et al., Appellees.**

**No. 93.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

April 10, 1968.

Rehearing Denied May 8, 1968.

Robert A. Hall, J. Eugene Clements, Baker, Botts, Shepherd & Coates, Houston, for appellants.

Tom Alexander, Jonathan Day, Butler, Binion, Rice, Cook & Knapp, Houston, for appellees.

SAM D. JOHNSON, Justice.

This was a suit on a livestock insurance policy brought by the assureds, T. I. Harkins and Tony Bellardi, who are appellees here. The suit was brought on a Lloyds' Livestock Policy under the provisions of which the insurer agreed to pay to the assureds the actual value of a race horse, Benedicto, provided the horse died while the policy was in force. The insurance policy in question characterizes the duration of insurance coverage as "from noon 1st November, 1961 to 31st October, 1962, both days inclusive." Benedicto became sick on October 14, 1962. He subsequently died four days after the recited policy expiration date, on November 4, 1962. Notification of death, the only notice of any kind given to the Underwriters, was given the next day, November 5, 1962.

The insurance policy contained a "Thirty Days Extension Clause" which recited as follows: "In consideration of the premium paid hereon, it is hereby agreed that this insurance is extended to cover the death of any animal hereby insured occurring within thirty days after the expiry date specified in this Insurance as a result of any accident occurring, or illness or disease manifesting itself, during the period of this Insurance, provided that the accident, illness or disease has been notified to the Underwriters in writing prior

to the said expiry date of this Insurance and subject otherwise to all the terms and conditions of this Insurance."

Benedicto was a race horse who had a highly successful career. While in transit from Kentucky to Houston, Benedicto manifested symptoms of shipping fever, which is a respiratory infection. The driver of Benedicto's van phoned Benedicto's trainer, Mr. Garrison on October 14, 1962, and notified him that the horse was not shipping well, and that Benedicto was being examined by a veterinarian in Nacogdoches. The driver also gave T. I. Harkins, one of the appellees, this same information. On October 15, 1962, the date of Benedicto's arrival in Houston, he was again seen by a veterinarian, Dr. E. H. Williams. Between the first date, October 14, 1962, and November 5, 1962, the date of death, Benedicto was examined and treated by veterinarians on some seventeen occasions. During this period, Dr. Williams, a Houston veterinarian, felt that Benedicto was improving and would do all right. Those that had occasion to see Benedicto seemed to have confidence that he was improving and would recover.

It wasn't until two or three days before Benedicto died that he became dull and listless, went off his feed, and though he improved the next day, relapsed and died rather quickly. From the time of Benedicto's arrival in Houston until after his death, appellee, T. I. Harkins, was in Louisiana where his mother was in critical condition. Harkins was generally informed of Benedicto's condition as he stayed in contact with his Houston office by phone. It was not shown, however, that the appellee, Tony Bellardi, was unavailable during this time. Other employees apparently were in daily contact with Benedicto during all of this period.

A post-mortem examination was conducted by Dr. Paul H. Kramer, a Houston veterinarian, which revealed that Benedicto died of pneumonia. Both Dr. Kramer and Dr. Williams testified that the condition which led to Benedicto's death manifested itself before the expiration date of the policy and that, regardless of treatment, Benedicto's condition was probably irreversible a number of days before his death.

In response to special issues the jury found, in substance, that the illness or disease which caused Benedicto's death on November 4, 1962, had manifested itself prior to October 31, 1962; the illness or disease contracted by Benedicto on or before October 14, 1962, was reported to appellants within a reasonable time; the failure of appellees to notify the insurance company of the illness or disease contracted by Benedicto on or before October 14, 1962, did not result in actual harm, detriment and prejudice to the appellants; the illness or disease which actually caused Benedicto's death was reported to the insurance company within a reasonable time after it manifested itself; the failure of appellees to notify the insurance company prior to October 31, 1962, of the illness or disease which caused Benedicto's death did not result in actual harm, detriment and prejudice to the appellants; the failure of appellees to notify the insurance company after October 31, 1962, of the illness or disease which caused the death of Benedicto did not result in actual harm, detriment and prejudice to the appellants; and that the actual value of Benedicto at the time of the first manifestation of the disease or illness which caused his death was $5,000.00.

The trial court entered judgment on the verdict for the appellees and against the appellants in the sum of $5,000.00 and appeal is duly perfected to this court. Appellants present some 25 points of error, but we believe there are four basic contentions.

First, that appellees are precluded from recovery since Benedicto died four days after the livestock policy expired, the thirty day extension clause never having become operative. By its terms, the policy of insurance was to expire at noon, Octo-

ber 31, 1962. There was thus no insurance coverage on the date of Benedicto's death four days later unless there was an extension of the duration of the policy. Appellees' position is that their notice of Benedicto's death was effective to render operative the "Thirty Days Extension Clause" thus extending the contract beyond the date on which it would otherwise have expired and that their notice of death on November 5, 1962, satisfied the contractual requirement of notification of accident, illness or disease in writing prior to the expiry date of the policy of insurance. We do not agree.

The policy stated, " * * * this insurance is extended to cover the death * * * occurring within thirty days after the expiry date * * * as a result of any * * * illness or disease manifesting itself, during the period of this insurance, *provided that* the accident, illness or disease has been notified to the Underwriters in writing prior to the expiry date * * *." (Emphasis added). It required notice to the Underwriters of illness, not death, prior, not after, the expiration date of the policy. The extension requirement is plain, definite, certain and unambiguous. By the policy terms, affirmative action on the part of the appellees was necessary to prevent the automatic termination of the policy on October 31, 1962, and it was uncontested that appellees failed to give such notification.

■ "Where the terms of an insurance policy are plain, definite and unambiguous, the courts cannot vary these terms * * * courts will not so construe plain language as to make a contract embrace that which it was intended not to include." Royal Indem. Co. v. Marshall (Tex.Sup.Ct.), 388 S.W.2d 176. We cannot make a new contract for the parties but must give effect to the agreement that is theirs. " * * * a contract is to be construed in accordance with its plain language * * * terms used in an insurance contract, like any other contract, are to be given their plain, ordinary and

generally accepted meaning unless the policy itself shows them to have been meant in a technical or different sense." General Am. Indem. Co. v. Pepper, 161 Tex. 263, 339 S.W.2d 660.

■ Similar interpretation is applied to expiration dates of policies of insurance. "Courts cannot disregard a plain unambiguous statement in the policy as to the expiration date, in the absence of an allegation of accident, mistake, or fraud." Appleman, Insurance, Sec. 7175. "In the absence of an allegation of accident, mistake, or fraud, the court could not disregard the plain and unambiguous statement in the policy that the expiration date thereof was at noon, March 19, 1932." Dillon v. General Exchange Ins. Corp., Tex.Civ.App., 60 S.W.2d 331, no writ hist. In the case at bar, there were no allegations of fraud, accident or mistake. The parties are therefore bound by the clearly expressed terms of the policy.

■ By its unambiguous terms the thirty day extension clause never became operative in the absence of the required notification that was necessary to activate the extension. Recovery is therefore precluded as a matter of law, since Benedicto died four days after the expiration date of the policy in question.

Appellants' second contention is that plaintiffs are precluded from recovery because they failed to give notice of Benedicto's illness, such notice being a condition precedent to recovery. This "immediate notice" provision, it should be noted, is altogether separate from the previously discussed notice provision required to keep the policy in force after its expiration date.

Condition number six of the policy provided, "It is a condition precedent to any liability of the Underwriters hereunder that * * * (b) * * * In the event of any illness, disease, lameness, injury, accident or physical disability, the Assured shall immediately, at his own expense, employ a qualified Veterinary Surgeon and

shall, if required by the Underwriters, allow removal for treatment, and (c) in the event of death of an insured animal, the Assured shall immediately, at his own expense, arrange for a post-mortem examination to be made by a qualified Veterinary Surgeon, and (d) in either event, the Assured shall *immediately give notice by telephone or telegram* to the person or persons specified for the purpose in the Schedule, who will instruct a Veterinary Surgeon on the Underwriter's behalf if deemed necessary; and *any failure by the Assured to do so shall render the Assured's claim null and void and release the Underwriters from all liability* in connection therewith, whether the Assured has personal knowledge of such events or such knowledge is confined to the representatives of the Assured or other persons who have care, custody or control of the animal(s)." (Emphasis added).

Here Benedicto's illness was first evidenced on October 14, 1962. The illness was shipping fever, which is a form of pneumonia. Pneumonia was identified as the cause of death. Though Benedicto's condition, which proved to be terminal, required treatment and examination by a veterinarian on seventeen occasions immediately following, no notice of any nature was given by the appellees during the ensuing twenty-three days.

A somewhat similar situation was presented in Hartford Livestock Ins. Co. v. Henning, 206 Ky. 9, 266 S.W. 912, where the plaintiff sued to recover on a livestock policy for the death of a Jersey cow. The policy provided that in the event of sickness of the cow, it was the duty of the assured to give notice at once by telegraph to the insurance company. It further provided that the insurance would not cover any loss where the assured failed to comply with this condition. The cow became ill on August 20, 1921 and died on September 3. The plaintiff was absent from her home and did not know of either the illness or the subsequent death of the cow until September 17, 1921, however, a veterinarian was in daily attendance on the cow during the period of her illness. The court said, "The conditions set forth in the policy are reasonable, and they are material and important parts of the contract, and should not be deliberately set aside as of no moment. The general rule is that, where a policy contains a stipulation to the effect that notice of illness and death must be given within a specified time, such stipulation is valid and must be complied with before recovery can be had on the policy, execpt where not made a condition precedent to such right of recovery, or where it is made to appear that the party whose duty it was to give the notice was prevented by casualty or misfortune of some kind ·from giving it * * *." In Alston v. Northwestern Livestock Ins. Co., 7 Kan.App. 179, 53 P. 784, a suit was brought on a livestock policy for the death of a horse. The policy required notification of sickness or accident at once, otherwise the policy should be void. The horse became ill on November 9, 1894 and died six days later, notice never having been given. The court there stated, "There is no question but that under the terms of this clause in this policy it was the duty of the plaintiff, in any event, to notify the company of the sickness of the animal. In case of a failure to do so, it is expressly provided that the policy shall become void absolutely. There is no room for construction or interpretation. This provision is clear and emphatic. It is immaterial whether the receipt of the notice would have been of advantage to the company. The contract provided that a forfeiture should follow a failure, and it became a material matter, and the plaintiff is bound thereby." See also National Livestock Ins. Co. v. Bartlow, 60 Ind.App. 233, 110 N.E. 224 (1915).

In Hensel v. Capital Livestock Ins. Co., 219 Ill.App. 77, 84 (1920), confronted with a similar situation involving an insured hog, the court stated, "By failing to give the required notice of this injury, plaintiff elected himself to carry the risk that the hog would die of this injury and to absolve

defendant from liability for death from that particular injury." In Travelers' Ins. Co. v. Myers & Co., 62 Ohio St. 529, 57 N.E. 458, the court said, "The insured undertook at their own peril to decide whether there was or would be a liability or not, and whether the injury received was severe enough to require the stipulated notice to be given. Having assumed that hazard and realized their mistake, they have no one to blame but themselves and they are left without a remedy."

The policy in question here again is clear and unambiguous. It requires as a *condition precedent to liability,* that appellees give notice of illness which they wholly failed to give. The method by which such notice is to be given, *telephone* or telegraph, immediately, emphasizes the importance attached to the condition. Only through immediate notice can the insurer investigate the causes of illness or death that are certainly unique to livestock policies. Only through immediate notice can the insurer know, or have an opportunity to know, that the animal will receive proper attention and treatment. Only through immediate notice can the insurer protect itself from the unusual hazards that accompany the insuring of animal life, as contrasted to the insuring of human life.

■ For the foregoing second reason we believe that appellees are precluded from recovery as a matter of law since they failed to give the required notice of illness, such notice being a condition precedent to recovery.

Appellants' third condition is that appellees are precluded from recovery because the notice of Benedicto's death, even if construed as a notice of illness, was given only after a twenty-three day delay which was unreasonable as a matter of law. It is appellant's position here that the notice given was unreasonable as a matter of law and that the question of harm was irrelevant and should never have been submitted to the jury.

We find only one Texas case involving the notice provision of a livestock policy, National Livestock Ins. Co. v. Henderson, 164 S.W. 852 (Tex.Civ.App.1914), no writ hist. There the plaintiff sued on a policy of insurance which included the following clause: "This company will not be liable for losses occurring if the assured, in case of sickness or accident to the animal or animals hereby insured, shall fail to report forthwith by registered mail or telegraph notice to the company at its home office * * *." The assured failed to report forthwith by registered mail or telegraph notice to the company at its home office; however, immediately upon the animal having been reported sick to the owner thereof, the owner gave notice to appellant's local agent. The horse died the next day. The court held that the transmittal of notice by mail or telegraph under these circumstances was unnecessary and that the notice provided for in the contract could be given: " * * * as well after the death of the animal as before, provided it is done 'forthwith' after the injury or after the sickness assumes a form which may reasonably be regarded as sufficiently serious to require medical treatment or the attention of a skilled veterinarian." The court continued, "The trial court had a right to conclude that as soon as the animal's condition indicated the need of skilled attention the appellee endeavored to procure the services of a veterinarian, and failed through no fault of his own, and that the animal's death so soon thereafter (one day) prevented the transmission of the notice (by the Company's agent to the Company) before it died. Under such circumstances, the notice which was thereafter sent of the death of the animal by the agent might well be regarded as sufficient compliance with this clause of the policy." The Henderson case therefore presents a situation where a delay of one day in the prescribed notification was held to be reasonable. Even this limited delay was qualified by the fact that immediate notice had been given to the insurer's local agent.

In Hough v. Kaskaskia Livestock Ins. Co., 230 Ill.App. 341, no notice of the insured horse's ailment was given until ten days after the assured's first observation that the horse was suffering from some ailment. The assured testified, " 'I thought there was nothing that would be fatal' * * *. 'Well, if I had to notify the Company, I think the horse had to be real sick.' " The court stated, "The evidence discloses that appellee was undertaking to determine for himself the propriety of giving appellant notice of the horse's sickness * * *. It was not for appellee to determine the seriousness of the sickness. Under the provisions of the policy it was his duty to notify the company, unless he was willing to undertake to carry his own insurance so far as that sickness was concerned." For cases in which delays have been held unreasonable as a matter of law, see also Hartford Livestock Ins. Co. v. Henning, supra; Green v. Northwestern Live-Stock Ins. Co., 87 Iowa 358, 54 N.W. 349; Alston v. Northwestern Live Stock Ins. Co., 7 Kan.App. 179, 53 P. 784; Swain v. Security Live-Stock Ins. Co., 165 Mass. 321, 43 N.E. 105.

■ If the Henderson case establishes a Texas "rule of reasonableness," can the delay here presented be said to be reasonable? Here the sickness was known by the appellees at the outset. This same illness continued and occasioned death twenty-three days later. The continued sickness of Benedicto justified the personal attention of a veterinarian on October 14, 15, 16, 17, 18, 19, 20, 23, 25, 26, 27, 28, 29, 30, 31, and November 1, 2 and 3. On none of these occasions was notice given by the appellees even though the requirement to do so was known to them. When asked what was the reason for not informing the Underwriters, one of the appellees, Harkins, testified, "I wasn't aware it was necessary to give that notice because I didn't think the horse was quite that sick. I thought he would get over it, a week for shipping fever, maybe a week or ten days, they are all right after shipping fever. They have to convalesce." Question: "You knew he was sick, but you thought he would get okay?" Answer: "Right." The appellees knew of the sickness and made their own estimate of its seriousness which proved to be wrong. They had the opportunity of notifying the insurer and determined not to do so. Such a determination, in the face of the expressed policy provisions, must be held to be made at their own peril.

■ Closely tied to appellees' "reasonable notice" position is their contention that the delay in giving such notice as was ultimately given, was not harmful to the insurer. Special issues submitted by the trial court inquired whether plaintiffs' failure to give the two notices involved herein resulted in actual harm, detriment and prejudice to the defendant. No such showing of harm is necessary, rendering these issues irrelevant. New Amsterdam Cas. Co. v. Hamblen, 144 Tex. 306, 190 S.W.2d 56. See also Klein v. Century Lloyds, Tex.Civ.App., 275 S.W.2d 91, affirmed, 154 Tex. 160, 275 S.W.2d 95.

■ For the reasons stated previously, we have not concluded that the insurance was still in effect on November 4, 1962. Even had a contrary determination been made, however, we believe that appellees are precluded from recovery herein by their failure to comply with the notice requirement. The notice of death that was given after a twenty-three day terminal illness is not "reasonable notice" and there was no showing of any waiver of the notice requirement. See Swain v. Security Live Stock Ins. Co., supra.

Having concluded that for the foregoing three reasons that this cause must be reversed and rendered, we do not give detailed consideration to appellants' fourth contention concerning the evidence that

was given to justify the actual value of Benedicto.

The judgment of the trial court for damages is here reversed and judgment rendered that appellees take nothing.

Reversed and rendered.