OPINION OF THE COURT
Frank Composto, J.
In this action for the recovery of proceeds under a livestock mortality insurance policy, both parties move for summary judgment.
*889 The plaintiffs’ race horse, insured under the policy, was humanely destroyed in February, 1977. The defendant insurance company thereafter denied plaintiffs’ claim for the $18,-000 in insurance proceeds on the ground that the plaintiffs failed to comply with the immediate notice provision contained in the general conditions of the policy, which provision reads as follows:
"1. NOTICE OF SICKNESS OR INJURY:
In the event of any illness, disease, lameness, injury, accident or physical disability whatsoever of or to an insured animal the Assured shall immediately at his own expense employ a qualified Veterinary Surgeon, to give proper care and to use every possible means to save the life of the animal and THE ASSURED SHALL IMMEDIATELY GIVE NOTICE. (PLEASE REFER TO CLAIM INFORMATION CARD ATTACHED TO THIS POLICY FOR SPECIFIC INSTRUCTIONS TO THE COMPANY (WHO WILL INSTRUCT A VETERINARY SURGEON TO EXAMINE THE ANIMAL IF DEEMED NECESSARY) AND ANY FAILURE BY THE ASSURED TO DO SO SHALL RENDER THE ASSURED’S CLAIM NULL AND VOID AND RELEASE THE COMPANY FROM ALL LIABILITY IN CONNECTION THEREWITH”.
Defendant contends that the plaintiffs were required thereunder to give notice to the defendant immediately upon any illness, disease, etc., while plaintiffs argue that such notice was mandated only if such illness, etc., was serious enough to affect the life of the horse.
The court finds the language of the clause in issue to "be so plain and unambiguous that men of average intelligence who invest in these [insurance] contracts may know and understand their meaning and import” (Hartol Prods. Corp. v Prudential Ins. Co. of Amer., 290 NY 44, 50), and that the defendant’s interpretation thereof "is the only construction that can fairly be placed thereon” (supra, p 49). The requirement that "the assured shall immediately give notice” can only refer back to the first part of the clause, "In the event of any illness, disease, lameness, injury, accident or physical disability whatsoever”, which by its terms is clear and explicit and cannot be read to mean, as plaintiffs maintain, only an illness, etc., which involves the life of the animal.
The plaintiffs’ construction, which the court rejects, is arrived at by usurping the words of one of the other conditions in the clause, "to give proper care and to use every possible means to save the life of the animal” (emphasis supplied) and *890 using them to modify the beginning clause. Not only is the plaintiffs’ interpretation unwarranted but it is inconsistent with the rationale behind the inclusion of such notice provision in the policy. It is regarded as socially acceptable to destroy an animal in the event of serious ailments, thus distinguishing this type of policy from ordinary life insurance, and immediate notice upon the happening of any illness, etc., without regard to its seriousness, enables the insurer to protect itself and preserve its rights under the policy in the following ways:
(1) Allows the insurance company to investigate the cause of the illness and determine whether such cause and the cause of any subsequent death are covered by the policy.
(2) Permits it to ascertain whether the horse is receiving or will receive proper attention and treatment or, alternatively, assume control over the treatment.
(3) Gives the insurer an opportunity to have its own veternarian examine the animal. (Circle 4 Stables v National Sur. Corp., 451 SW2d 564, 567-568 [Tex]; Underwriters at Lloyds, London v Harkins, 427 SW2d 659, 664 [Tex]; Hartford Live Stock Ins. Co. v Henning, 206 Ky 9.) A notice which is given only after the illness becomes serious enough to endanger the life of the horse would defeat these purposes.
Consequently, the court holds that the provision in the subject insurance policy requiring immediate notice of illness, etc., becomes operative as soon as the horse becomes ill, etc., for any reason whatsoever and does not depend on the seriousness of the illness. As the court in the Circle 4 Stables case said in construing a similar clause, "The language used does not provide for any judgment or speculation by the insured as to whether or not the injury or illness be serious or not nor whether the animal might or might not die” (supra, p 567).
The court further holds that the notice provision constitutes a material condition precedent to the defendant insurance company’s liability and that the plaintiffs’ failure to satisfy the notice requirement vitiates the policy without the necessity of the insurer showing prejudice (Security Mut. Ins. Co. of N. Y. v Acker-Fitzsimons Corp., 31 NY2d 436, 440; Deso v London & Lancashire Ind. Co. of Amer., 3 NY2d 127, 129).
The papers submitted herein disclose the following undisputed facts preceding the horse’s death in February, 1977: the plaintiffs acquired the animal on January 31, 1976 and he *891 raced approximately 20 times in the next four and a half months. His last race was on June 18, 1976, at the conclusion of which the horse was "ouchie”, i.e., a little sore on the front left foot. He was examined by the Roosevelt Raceway veterinarian who recommended that the animal rest from racing. The horse remained there in training and on July 26 the veterinarian performed a nerving operation to relieve the pain in the sore area. During this period from June 18, 1976 until the animal’s departure for Loraway Farms on August 4, 1976, he was treated by another veterinarian, who states, with respect to the horse’s condition during this period, that he was "three-legged lame” and that X rays revealed "a very active ringbone with extensive calcification on going”. The horse was removed to Loraway Farms, at the trainer’s recommendation, in order to be given swimming exercises. While there he was under the care of a third veterinarian who examined him approximately once every two weeks. This veterinarian confirmed that the horse had a severe ringbone and concluded that the lameness would never be corrected to achieve a pain-free state and that the horse would never be able to race again. He recommended on November 12, 1976 that the horse be humanely put to death.
Throughout this entire period, from the animal’s last race on June 18, 1976 through the middle of November 1976, a period of five months, the plaintiffs concededly never notified the defendant of the horse’s condition, viz., of his "ouchiness”, the nerving procedure, the prolonged treatments by various veterinarians. It was not until November 19, 1976 that plaintiffs finally sent a letter to the defendant’s agent with the veterinarian’s recommendation of euthanasia.
These facts clearly reveal that the plaintiffs failed to give the immediate notice of the horse’s physical disability as required by general condition No. 1 of the policy, until it was too late (i.e., until after death was recommended) for the defendant to exercise the rights available to it under the policy had it known earlier of the animal’s lameness. Under these circumstances, the defendant is relieved of any liability under the policy as a matter of law.
Accordingly, the defendant’s motion for summary judgment dismissing the complaint is granted, and the plaintiffs’ motion is denied.